Battle, J.
 

 The first objection urged by the defendant against the plaintiff’s right to recover is, that by the laws of the State of Maryland, where the bond was executed, it was void because not written upon stamped paper. If upon consideration this objection be found to be valid, it will dispose of the case and make it unnecessary to consider any other question discussed by the counsel.
 

 The Act of Maryland upon which the defendant relies, is entitled “ An Act imposing duties on promissory notes, bills of exchange, specialties and other instruments of writing, to aid in paying the debts of the State.” It was passed in the year 1844, and in the 1st section imposes certain duties upon every sheet or piece of paper, Ac., upon which shall be written or printed any bond, obligation, single bill or promissory note, Ac. In the 8th section it is declared “that no instrument of writing whatsoever charged by this Act, with the payment of a duty as aforesaid, shall be pleaded or given in evidence in any Court of this State, or admitted in such Court to be available for. any purpose whatsoever, unless the same shall be stamped or marked as aforesaid,” Ac. The question is, whether, as the bond was executed in the State of Maryland upon unstamped paper, and could not therefore be made available for any purpose in the Courts of that State, it can be enforced in the Courts of this State by the obli-gee or his assignee. In the English cases upon this subject there seems to have been a direct conflict- of opinion among Judges of great eminence. In
 
 Alvis
 
 v.
 
 Hodgson,
 
 7 Term Rep. 241, Lord Kenyon held that the plaintiff could not recover upon a written contract made in Jamaica, which by the laws of that island was void for want of a stamp. Lord Ellenborough ruled the same way in
 
 Clegg
 
 v.
 
 Levy,
 
 3 Camp. N. P. Rep. 166, with regard to an agreement not valid for the same cause by the laws of Surinam. In
 
 Wynne
 
 v.
 
 Jackson,
 
 2 Russ. Rep. 351, (3 Eng. Con. Ch. 144,) the Yice Chancellor held the contrary upon certain
 
 *316
 
 bills drawn in such form in France, that no recovery could be had ^upon them in the Courts of that country. Lord Chief Justice Abbott held the same in tire case of
 
 James
 
 v.
 
 Catherwood,
 
 2 Dowl. & Ry. Rep. 190, (16 Com. Law. Rep. 165.) The English elementary writers attempt to reconcile.these apparently conflicting decisions by making this distinction
 
 ;
 
 if the bill, note or agreement be drawn or made in a foreign independent State, it may be enforced in England, though requiring a stamp in the country where drawn or made, but not if drawn or made in any .part of the British Empire. Chitty on Bills, 57. Byles on Bills, 302, (61 Law Lib. 295.) On the other hand, Judge Story, both in his commentaries on promissory notes, section 158, and on the conflict of laws, section 260, contends with much force of reasoning that “if by the laws of a foreign country a contract is void unless it is written on stamp paper, it ought to be held void every where ; for unless it be good there, it can have no obligation in any other country. It might be different if the contract had been made payable in another country, or if the objection were not to the validity of the contract, but merely to the admissibility of other-proof of the contract in the foreign Court.” In the 261st section of his work on the conflict of laws, a book uni- ■ versally recognized as one of the highest authority, he states the grounds of his opinion, as follows : “ The ground of this doctrine as commonly stated, is that every person contracting in a place is understood to submit himself to the law of the place, and silently to assent to its action on the contract. It would be more correct to say that the law of the place of the contract acts upon it independently of any volition of the parties in virtue of the general sovereignty possessed by every nation to regulate all persons, property and transactions within its own territory. And in admitting the law of a foreign country to govern in regard to contracts made there, every nation merely recognises from a principle of comity the same right to exist in other nations, which it demands and exercises for itself. ”■ This course of reasoning commends itself strongly to our judgments, and we think that it is especially applicable to the several States of our confederacy, which, though foreign to each other in some respects^ are united for all great na-* tional purposes under orie Government) and ought) 'therefore*
 
 *317
 
 whenever they can, to aid rather than hinder each other in carrying out each its own peculiar policy; and to do this in nothing more than in regard to its revenue laws. In doing this, we shall be supported by the authority of the course pursued by the English Courts, towards those provinces of the British Empire which are governed by their own domestic laws. Byles on Bills,
 
 ubi supra.
 
 We have not been referred to, nor have we been able to find any case, decided in our own State, directly upon this point. But our Courts have several times recognised the doctrine that
 
 “
 
 the law of the country where a contract is made, is the rule by which its validity, its meaning and its consequences are to be determined.”
 
 Watson
 
 v.
 
 Orr,
 
 3 Dev. Rep. 161. This doctrine was applied in
 
 Anderson
 
 v.
 
 Doak,
 
 10 Ire. Rep. 295, to the support of a bill of sale for slaves without a subscribing witness, executed in Yirginia where no such formality is required. And in
 
 Drem'y
 
 v.
 
 Phillips, ante
 
 81, decided at the last term, it was admitted by counsel, that a bill of sale for slaves executed in Yirginia where all the parties resided, was good though not attested, nor proved and registered as required by the laws of North Carolina, because by the laws of Yirginia no such attestation, proof and registration were necessary. We can see no reason for a distinction between a formality made requisite to the validity of a contract by the law , of a State in aid of its revenue, and a formality required for any other cause. In every such case, the
 
 lex loci contractus
 
 ought to determine the rights of the parties- every where. We therefore think that his Honor committed no error in holding that the present action could not be sustained, and the judgment of nonsuit must be affirmed.
 

 Per Curiam. Judgment affirmed.