## MRS. ELLIE S. KEESLER v. MUTUAL BENEFIT LIFE INSURANCE COMPANY OF NEW YORK.

(Filed 7 May, 1919.)

1. **Insurance—Contracts—Interpretation—Lex Loci—Contractus.**

    In an action brought in the courts of this State to recover upon a matured policy of life insurance issued and accepted by the insured in a sister State where the insured lived and died, the validity of the contract will be determined under the decisions of the courts of such other State.

2. **Contracts — Lex Loci Contractus — Courts—Decisions—Evidence—Questions of Law—Trials.**

    Where the decisions of a sister State are controlling upon a contract made there but sued upon in the courts of this State, our courts will not take judicial notice of such decisions, but require them to be proved as other facts in the case should be established; and when so established their interpretation is a matter of law, to be decided or declared by our courts.

3. **Contracts — Insurance — Lex Loci Contractus—Courts—Decisions—Laws of Other States—Georgia.**

    It is *held* in this case that, under the decisions of the Supreme Court of Georgia the delivery of a life insurance policy by the agent of the company to the insured, while the latter was upon his bed with a sickness from which he afterwards died, did not bind the insured upon the

policy contract contrary to a provision therein, and in the application for the policy, that it would be invalid under the circumstances, and under a provision of the policy that the act of the agent could not therein vary the terms of the contract, there being no element or suggestion of fraud in the transaction.

APPEAL by plaintiff from *Harding, J.,* at the November Term, 1918, of MECKLENBURG.

This action was brought by the plaintiff to recover of the defendant $3,000 claimed to be due on a policy of insurance upon the life of -Augustus L. Keesler, in favor of the plaintiff, alleged to have been issued by the defendant and delivered to the insured a few days prior to his death.

It is admitted by both parties that the insured was a resident of the State of Georgia at the time the application for insurance was made, and that said application was solicited and obtained by a local agent of the company in Georgia, and that thereafter the policy issued thereon was attempted to be delivered to the insured in the State of Georgia, and that therefore the rights of the parties to this action must be governed and determined by the laws of the State of Georgia.

The application was made and signed by the applicant on 30 August, 1917, and the policy was physically delivered to the insured by the local agent (Lawton) in Macon, Georgia, on 8 September, 1917, while he was confined to his bed in his home, and the premium then paid, the agent at the time knowing he was sick.

As soon as defendant discovered that there had been a change in the health of the applicant, between the date of the application and attempted delivery of the policy, it immediately denied to the plaintiff its liability on the policy, tendered to her the return of the premium paid thereon, and demanded a surrender of the policy, all of which was refused, and when this action was brought and the answer filed the defendant deposited with the clerk of the court the amount of said premium to keep said tender alive.

No executive officer of the company had any notice whatever of any change in the health of the applicant after the date of the application until long after his death.

The applicant became sick on 4 September, 1917, and remained continuously sick from that date until the 15th of said month, when he died.

For the purpose of proving the law of Georgia applicable to the facts of this case, the defendant introduced sections 2499, 2480, 2481, 2483, and 6207 of the Civil Code and the opinion of Shepard Bryan, a practicing attorney in Atlanta, which, by consent of plaintiff's counsel, was offered in lieu of Mr. Bryan's sworn testimony in the case. Also the various decisions of the Supreme Court of Appeals of the State of Georgia referred to in said opinion.

The application, which was signed by the insured, among other things provides:

"The proposed policy shall not take effect unless and until the first premium shall have been paid during my continuance in good health and unless also the policy shall have been delivered to and received by me during my continuance in good health, except in case a conditional receipt shall have been issued, as hereinafter provided." (There was no such conditional receipt issued.)

The application also further provides:

"I agree that no agent or other person, except the president, vice-president, a second vice-president, a secretary or the treasurer of the company has any power on behalf of the company to make, modify, or discharge any contract of insurance, to extend the time for payment of premium, waive any lapse or forfeiture of any of the company's rights or requirements, or to bind the company by making any promises respecting any benefits under any policy issued hereunder, or by accepting any representations or information not contained in this application."

The policy, in addition to containing a clause similar to the first above quoted, also further provides:

"This policy and the application herefor, copy of which is endorsed hereon or attached hereto, constitute the entire contract between the parties hereto," etc.

The defendant contended that the plaintiff could not recover because it was admitted the policy was delivered when the insured was not in good health, while the plaintiff contended that although the insured was not in good health at that time this fact was known to the agent of the defendant, and the defendant replied that by the terms of the application and the policy the agent had no authority to waive any provision of the policy.

The issue as to waiver was as follows:

7. Did the defendant, through his agent Lawton, waive the clause in the application and policy of insurance providing that said policy should not take effect unless and until said policy should be delivered and the first premium paid thereon during the good health of the applicant, by delivering said policy with knowledge that the said Keesler was, at said time, confined to his bed or room, suffering from an ailment of more or less temporary or serious nature? Answer: "No."

The court instructed the jury on this issue as follows:

"The court instructs you that this case is being tried under the laws of the State of Georgia, the policy having been issued in the State of Georgia, the deceased having died in the State of Georgia, a resident of the State of Georgia at the time of his death, and the court is of the opinion that the law as laid down by the Supreme Court of Georgia in

*Reese v. Ins. Co.* is the law of Georgia applicable to this case, and that the law laid down by the Supreme Court of Georgia in *Few v. Ins. Co.* is not the law applicable in this case. Therefore the court instructs you, under the evidence of the plaintiff, if you believe the plaintiff, to answer the seventh issue 'No.' " and the plaintiff in apt time excepted.

Judgment was entered upon the admitted facts and upon the answer to the seventh issue in favor of the defendant, and the plaintiff appealed.

*J. D. McCall attorney for plaintiff.*

*Frederick L. Allen, Jas. H. Pou, and Cansler & Cansler attorneys for defendant.*

ALLEN, J. The contract of insurance on which the plaintiff sues was made in the State of Georgia where the insured lived and died, and "It is settled that 'Matters bearing upon the execution, interpretation, and validity of a contract are determined by the law of the place where it is made.' *Scudder v. Nat. Union Bank,* 19 U. S., 406." *Cannady v. R. R.,* 143 N. C., 442. See, to the same effect, *Satterthwaite v. Doughty,* 44 N. C., 314; 12 C. J., 448; 5 R. C. L., 931.

We must then inquire into the laws of our sister State, and the rule prevailing with us is that "The existence of a foreign law is a fact. The court cannot judicially know it, and therefore it must be proved; and the proof, like all other, necessarily goes to the jury. But when established, the meaning of the law, its construction and effect, is the province of the court." *State v. Jackson,* 13 N. C., 566.

"The court is presumed to know judicially the public laws of our State, while in respect to private laws, and the laws of other States and foreign countries, this knowledge is not presumed; it follows that the existence of the latter must be alleged and proved *as facts,* for otherwise the court cannot know or take notice of them. This is familiar learning. 3 Wooddeson's Lec., 175. . . .

"If the law be written, and its existence is properly authenticated, the court, availing itself of the aid of the judicial decisions of the country, puts a construction on it, and explains its meaning and legal effect, and the jury have nothing to do with it save to follow the instructions of the court as if it was our own law. If the law is unwritten, and its existence is presumed or admitted, then the jury have nothing to do with it. . . .

"But if the existence of an unwritten law of another State or foreign country is not presumed or admitted, then its existence must be proved by competent witnesses, and the jury must then pass on the *credibility of the witnesses,* and it is the province of the court to inform the jury as to the construction, meaning, and legal effect of the law, supposing

its existence to be proven; and to this end the court should avail itself of the judicial decisions of the State or country."

To prove the fact, that is, the existence of the law, the decisions of the highest appellate court of Georgia, a statute of that State, and the opinion of Mr. Shephard Bryan, a distinguished lawyer of Atlanta, used as a deposition by consent, were introduced in evidence, and as none of these sources are impeached, it becomes for us a question of construction and interpretation.

In *Reese v. Fidelity Mutual Life Ins. Co.,* 111 Ga., 482, the question now presented was decided in favor of the contention of the defendant on facts almost identical with those in the present record.

In that case there was provision in the application and the policy that the policy should not take effect unless the first premium was paid and the policy delivered during the continuance in good health of the insured, and in both the application and policy there was the limitation on the authority of the agent as to waiver, and it was held that there was no liability on the insurance company because the policy was delivered when the insured was not in good health although the agent knew of his physical condition.

In the *Reese case,* after discussing two Georgia cases, the Court said: "There was no pretense in either of those cases that the authority to make the waiver had been expressly withheld from the agent as was done both in the application and in the policy in the case at bar. Under the express terms of the agreement in this case the agents had no authority to make such waiver. The policy declared that 'No agent of the association has any power to make, alter, or discharge contracts, waive forfeitures, or grant credit; and no alteration of the terms of this contract shall be valid, and no forfeiture hereunder shall be waived, unless such alteration or waiver be in writing and be signed by the president of the association'; and the application contained substantially the same provision. More distinct and unequivocal language could hardly have been used to express the mutual understanding of the parties to the contract. The applicant was an intelligent business man; he signed the application; and in the absence of any want of opportunity to read it, or of any suggestion of fraud practiced upon him, it must be conclusively presumed that he fully understood the entire transaction.

"It is a familiar rule that a principal may limit the power of his agent, even within the apparent scope of his authority, so that the agent cannot, in violation of the restriction, bind his principal when dealing with one who has notice of the limitation. Here the applicant expressly agreed in writing that no agent of the association should have authority to grant credit and no alteration of the contract of insurance should

be valid unless in writing and signed by the president of the association, and there was no pretense that the president ever signed such writing. If in violation of these specific provisions of the contract it were held that the agent of the association could vary the terms and grant credit for the first premium, instead of requiring its payment in cash, then must we subscribe to the rule, which seems to be supported by some adjudicated cases, that an insurance agent, unlike all other agents, may bind his principal, although acting contrary to express instructions and dealing with one who has full knowledge of the limitations of his authority. The soundness of such a doctrine does not commend itself to our minds. It must not be thought that the established rules of the law of agency do not apply to the transactions of life insurance companies. There is no particular sanctity about the business of life or any other kind of insurance. The companies engaged in it have the right to employ agents and give to them such authority as they please. Whatever limitations are imposed upon such agents, if communicated to those dealing with them, will be binding, and if this authority be exceeded, the act will not bind the principal."

The *Reese case* was affirmed, without comment, in *Ins. Co. v. Clancy,* 111 Ga., 865, and in *Mutual Reserve Asso. v. Stephens,* 115 Ga., 194, and *Johnson v. Ins. Co.,* 123 Ga., 406, the Court saying in the *Stephens case:* "This case falls squarely within the decision rendered by this Court in *Reese v. Fidelity Asso.,* 111 Ga., 482, which was followed in *Mutual Life Ins. Co. of Ky. v. Clancy, id.,* 865," and holding according, and in the Johnson case: "In the *Reese, Clancy,* and *Stephens cases,* which were actions on policies of life insurance, the waiver sought to be set up was as to a provision that the policy should not become binding upon the company until the first premium had been paid during the good health of the insured. Unquestionably, as to a matter concerning the time when the contract is to become of force, or as to the waiver of the conditions of the policy subsequently to its issuance, the insured, by accepting the policy, would be bound by its terms, and could not set up a waiver which he was bound to know the company's agent had no power to make."

If, therefore, the *Reese case* represents the law of Georgia correctly it is decisive of the controversy between the plaintiff and the defendant, but it is insisted by the plaintiff that it has been overruled by the subsequent case of *Few v. Knights of Pythias,* which was before the Supreme Court of Georgia three times, and is reported in 136 Ga., 181; 138 Ga., 779; 142 Ga., 240, in which it was held that a condition in a *policy,* rendering it void if the first premium was paid and the policy delivered when the insured was not in good health, was waived by the receipt of the premium and delivery of the policy by an agent who knew of the

condition of the insured, notwithstanding the limitations on the power of the agent contained in the *policy*.

The two cases are not necessarily in conflict as in the *Reese case,* like ours; the provision in regard to the payment of the first premium and the delivery of the policy during the continuance in good health, and the limitation on the authority of the agent, were in the *application* as well as in the policy, while in the *Few case* they were in the policy alone, and being in the application, which was preliminary to the contract of insurance and a negotiation for it, the parties could agree upon the conditions which must exist before the policy would be in force, and at the time the policy was delivered the insured knew he was dealing with an agent of limited authority, who could not waive the condition as to good health.

If, however, there is an irreconcilable conflict the *Reese case* is still authoritative under the laws of Georgia.

In the first place it was reaffirmed in 1916, after the last appeal in the *Few case,* in *Williams v. Ins. Co.,* 146 Ga., 245, in the following language:

"The instant case is not identical in its facts with the case of *Reese v. Fidelity Mutual Life Ins. Co.,* 111 Ga., 482 (36 S. E. R., 637), but upon the controlling questions it is very similar, and we are of the opinion that the ruling there made is controlling here. The reasoning upon which this rule is based, and which is entirely applicable to the facts of the present case, is sound and supported by the authorities adduced to support the conclusions reached."

Again, the *Reese case* was by a unanimous decision in 1900, and it is not referred to in either appeal in the *Few case,* and it is provided by the Georgia Code, sec. 6207, that "Unanimous decisions rendered after said date (1 January, 1897) by a full bench of six shall not be overruled or materially modified except with the concurrence of six Justices, and then after argument had, in which the decision, by permission of the Court, is expressly questioned and reviewed; and after such argument the Court in its decision shall state distinctly whether it affirms, reverses, or changes such decision."

This statute has been upheld in *Shephard v. Bridgers,* 137 Ga., 624, where the Court, after referring to two cases, says: "The decision in these two cases have never been reversed or formally modified, though in some decisions the cases under consideration were distinguished from those cited above. If there should be an irreconcilable conflict between them and some later decision, without any overruling or changing of the earlier decisions, under our statute the older decision would stand. Civil Code (1910), sec. 6207."

We are therefore of opinion that the plaintiff cannot recover, and that his Honor committed no error in his instruction on the seventh issue.

No error.