## TURNER v. LIBERTY MUT. INS. CO. et al.

### Civ. No. 369.

United States District Court,
E. D. North Carolina,
Wilson Division.

July 23, 1952.

Allsbrook & Benton, Roanoke Rapids, N. C., for plaintiff.

Thorp & Thorp, Rocky Mount, N. C., for Liberty Mut. Ins. Co.

Battle, Winslow & Merrell, Rocky Mount, N. C., for Bankers Indemnity Ins. Co.

GILLIAM, District Judge.

This case was heard without a jury at a special term in Tarboro, North Carolina, on February 22, 1952.

Prior to the institution of the present action, Posie Turner, the plaintiff herein, instituted a suit against Clarence Tann, the driver of a certain truck cab or tractor, alleging that Tann's negligent operation of the tractor was the proximate cause of the several injuries and damages sustained by Turner in an accident involving the tractor. Turner was awarded a judgment against Tann in the amount of $15,000.

Thereafter, Turner brought the instant suit against the defendants, alleging liability on their part by virtue of the "omnibus" clauses in the policies they issued covering the use of the tractor. These "omnibus" clauses are essentially alike, each having the customary provision that the word insured shall include any person while using the automobile and any person or organization legally responsible for its use, provided the actual use is with the permission of the named insured.

The defendant Bankers Indemnity Company issued its liability policy to one Daniel Pantaleo, a resident of New Jersey, and the owner of the tractor referred to above. The defendant Liberty Mutual Insurance Company issued its comprehensive policy to Jersey Package Company, a New Jersey corporation.

■ It appears from the photostatic copy of the Liberty Mutual policy that it was countersigned in New Jersey. It does not appear from the photostatic copy of Bankers policy where it was countersigned; but since the company is a New Jersey company and the insured is a resident of New Jersey, no other evidence appearing, it is assumed and concluded that both policies were applied for, countersigned, and delivered in New Jersey. Hence, each policy was a New Jersey contract and is to be governed by the law of New Jersey as regards interpretation and effect. Myers v. Ocean Accident & Guarantee Corporation, 4 Cir., 99 F.2d 485; Connecticut General Life Ins. Co. v. Skurkay, 204 N. C. 227, 167 S.E. 802; Dixie Fire Insurance Co. v. American Bonding Co., 162 N.C. 384, 385, 78 S.E. 430. In any event the plaintiff concedes that the New Jersey law is applicable.

Daniel Pantaleo leased his tractor to Jersey Package Company. Jersey Package Company sent the tractor, by its own driver, to Riverside Manufacturing Company, an affiliate, in Murfreesboro, N. C., both companies being subsidiaries of a common parent corporation. The tractor was to be used in carrying logs, destined for Jersey Package Company, from the logwoods in Halifax County, N. C., to a railroad siding, at which point the logs were loaded for shipment to New Jersey.

On October 8, 1946, Riverside Manufacturing Company sent Clarence Tann with the tractor to R. J. Sydenstricker, an independent logger, with instructions for Sydenstricker to employ Tann and put him to work in hauling the logs that Sydenstricker was cutting in Halifax County for the use of Jersey Package Company. Sydenstricker, who had no direct dealings with Jersey Package Company, employed Tann, but billed Riverside for Tann's wages and for the costs incurred in fueling and maintaining the tractor. And Riverside, in turn, billed Jersey Package Company for those wages and costs. Also, Riverside billed Jersey Package Company for the actual cost of the logs, in that Sydenstricker contracted with Riverside rather than Jersey Package Company, and Riverside was merely contracting on behalf of Jersey Package Company.

At the time when Sydenstricker employed Tann it was agreed that Tann might use the tractor not only in the actual hauling of logs, but also in going back and forth from his work to his home, which was approximately seven miles from the scene of logging operations; that is, Tann was permitted to drive the tractor to and from work solely for the purpose of having him on the job early in the morning. But Syden-

stricker did not authorize Tann to use the tractor on personal missions, and on at least one occasion Tann was reprimanded by Sydenstricker for having used the tractor on a personal mission during lunch period.

On the evening of October 18, Tann drove the tractor with trailer attached from the log-woods to his residence, as was customary and as was expressly permitted. Thereafter, about 7:00 o'clock that evening, he disconnected the trailer from the tractor and began driving the tractor to Jackson, N. C., for the purpose of getting his laundry. Before reaching Jackson, Tann picked up the plaintiff, Posie Turner, who was thumbing at the side of the road; and at approximately 9:30 there occurred the collision and the injuries to plaintiff, for which as stated, plaintiff has obtained judgment against Clarence Tann.

The plaintiff requests the Court to find as a fact that prior to Tann's use of the tractor on the evening of October 18, he, Tann, was expressly authorized by Sydensticker to so use the tractor on this particular personal mission; and plaintiff contends that the evidence presented supports that finding of fact.

■ On the contrary, it appears and is found by the Court that no such permission was given.

■ Notwithstanding the above finding of fact, it is urged by plaintiff that he is still entitled to recover under New Jersey law as is set out in the case of Rikowski v. Fidelity & Casualty Company of N. Y., 116 N.J.L. 503, 185 A. 473. But the Rikowski case should be distinguished on fact from the instant case and is, therefore, in the opinion of the Court, not controlling.

In the Rikowski case the assured, on a shopping trip, told her chauffeur to find a place to park and to return for the assured in an hour. The chauffeur drove off as directed, but before he found a parking place he met some friends, offered to take them home, and while accommodating those friends he had an accident. The accident occurred before the expiration of the hour and before the chauffeur found a parking place.

The New Jersey Court, in finding the insurer liable, distinguished the Rikowski case from the earlier case of Nicholas v. Independence Indemnity Co., 165 A. 868, 11 N.J.Misc. 344; but the Nicholas case was not repudiated. The Nicholas case had denied liability under a fact situation strikingly similar to that presently before this Court. In the Nicholas case an employee, truck driver, was instructed by his employer, a contractor, to drive the truck home and keep it in the yard until another job was ready. But prior to receiving notice of a new job, the employee drove the truck away from where it stood in the yard for the purpose of using it to remove rubbish; and the accident took place in the course of that unauthorized trip.

Again, in Penza v. Century Indemnity Co., 119 N.J.L. 446, 197 A. 29, the Rikowski case was distinguished from the Nicholas case as well as from the facts there before the Court; and the Court denied liability on the part of the insurer, citing the Nicholas case as precedent. The distinguishing feature in these cases is characterized by the New Jersey Court as a "hiatus or break" that may intervene between the operation of the vehicle as authorized and the unauthorized venture. In the Nicholas case there was such an interval between the truck's coming to rest in the yard, as authorized and the subsequent removal thereof for a foreign and unauthorized purpose. In the Rikowski case there was no such interval, for the accident took place before the authorized purpose was fulfilled and before the chauffeur's hands had left the wheel. And in the Penza case the "hiatus or break", relieving the insurer, took place when a chauffeur, after parking the car for the night as instructed, thereafter reentered the car on the same night and injured the plaintiff while carrying four passengers on a sight-seeing tour.

Thus, it is apparent that the instant case is governed by the Nicholas and Penza cases, for here, as there, the vehicle came to rest and the driver's hands left the wheel according to instructions prior to re-entry

therein and setting out on the unauthorized venture.

In finding earlier that New Jersey law governed the interpretation and effect of these insurance contracts, the Court was fully mindful of the language of N.C.Gen. Stat. § 58–28: "All contracts of insurance on property, lives, or interests in this State shall be deemed to be made therein; and all contracts of insurance the applications for which are taken within the State shall be deemed to have been made within this State and are subject to the laws thereof."

■ It was contended by the defendants here that the first clause of the above statute should operate to make these insurance contracts North Carolina contracts because the insured property, the tractor, was property in this State and because the fact of existent liability insurance protecting Clarence Tann under the "omnibus" clauses constitued an interest in this State. But the Court cannot concur with the defendants in this contention.

N.C.Gen.Stat. 58–28 was enacted in 1899, but there has not been cited to this Court a single case decided by the N. C. Supreme Court wherein that statute has been construed to operate as the defendants contend. On the contrary, in at least one instance a similar statute was construed to be inoperative on constitutional grounds where a similar construction was placed thereon by a state court. Hartford Accident & Ind. Co. v. Delta & Pine Land Co., 292 U.S. 143, 54 S.Ct. 634, 78 L.Ed. 1178. The United States Supreme Court used the following language in treating with the extra-territorial effect of a state statute regarding insurance contracts: 292 U.S. at page 150, 54 S.Ct. at page 636. "A legislative policy which attempts to draw to the state of the forum control over the obligations of contracts elsewhere validly consummated and to convert them for all purposes into contracts of the form, regardless of the relative importance of the interests of the forum as contrasted with those created at the place of the contract, conflicts with the guaranties of the Fourteenth Amendment."

Therefore, judgment will be entered in favor of the defendants. Counsel for defendants will forthwith present an appropriate decree, and counsel for plaintiff, as well as counsel for each defendant, will propose findings of fact consistent with this memorandum.