**COLLINS & AIKMAN CORP. v. HARTFORD ACCIDENT & INDEMNITY CO.**

[335 N.C. 91 (1993)]

Our decision in *Granville County* should not serve as a complete bar to the courts, irrespective of the facts and circumstances, in cases where genuine controversies exist between parties such as the ones at hand. As Judge Cozort observed:

> [A]llowing plaintiffs' claims regarding adherence to statutes and rules would not create a risk that the administrative process would be improperly delayed by frivolous claims for injunctive relief. No plaintiff would be entitled to preliminary injunctive relief unless evidence was presented which demonstrated probable cause plaintiff will be able to establish the rights asserted and a reasonable apprehension of irreparable loss unless immediate relief is granted.

*Richmond County*, 108 N.C. App. at 710-11, 425 S.E.2d at 474-75 (quoting *Williams v. Greene*, 36 N.C. App. 80, 85, 243 S.E.2d 156, 159, *rev. denied*, 295 N.C. 471, 246 S.E.2d 12 (1978)).

Thus, I respectfully dissent from that part of the majority opinion which holds that *Granville County* compels dismissal of plaintiffs' claims on the grounds that such claims do not present justiciable issues and that no genuine controversy exists between the parties.

———————

COLLINS & AIKMAN CORPORATION v. THE HARTFORD ACCIDENT & INDEMNITY COMPANY, AND AETNA CASUALTY AND SURETY COMPANY

No. 252PA92

(Filed 5 November 1993)

**1. Insurance § 99 (NCI4th) — excess liability insurance — delivery of policy in another state — N.C. connections to interests insured — interpretation governed by N.C. law**

Even though an application for excess liability insurance came from California and the last act to make a binding insurance contract (the delivery of the policy) occurred in California, the contract is deemed to have been made in North Carolina under N.C.G.S. § 58-3-1 and the law of North Carolina thus governs in interpreting the policy where North Carolina has close connections with the interests insured by the policy

COLLINS & AIKMAN CORP. v. HARTFORD ACCIDENT & INDEMNITY CO.

[335 N.C. 91 (1993)]

because most of the insured's vehicles were titled in this state and the insured's transportation division is located in this state.

**Am Jur 2d, Insurance § 320 et seq.**

2. **Insurance § 895 (NCI4th) — excess liability insurance — coverage of punitive damages**

An umbrella excess liability insurance policy provided coverage for punitive damages awarded in a wrongful death action where the policy insured for loss "because of bodily injury" since punitive damages were recovered because of the recovery for bodily injuries to the decedents.

**Am Jur 2d, Insurance § 703 et seq.**

**Liability insurance coverage as extending to liability for punitive or exemplary damages. 16 ALR4th 11.**

3. **Insurance § 895 (NCI4th) — excess liability insurance — punitive damages not fines or penalties**

Punitive damages do not constitute "fines or penalties" which are excluded from coverage under an excess liability insurance policy.

**Am Jur 2d, Insurance § 703 et seq.**

**Liability insurance coverage as extending to liability for punitive or exemplary damages. 16 ALR4th 11.**

Justice MEYER dissenting.

Chief Justice EXUM and Justice PARKER join in this dissenting opinion.

On discretionary review pursuant to N.C.G.S. § 7A-31, from a decision of the Court of Appeals, 106 N.C. App. 357, 416 S.E.2d 591 (1992), reversing and remanding a judgment entered by Saunders, J., in the Superior Court, Mecklenburg County, on 15 March 1991. Heard in the Supreme Court 12 April 1993.

This appeal brings to the Court a question as to the liability insurance coverage under an insurance policy issued by the defendant, the Hartford Accident and Indemnity Company, to plaintiff. The plaintiff is a wholly owned subsidiary of Wickes Companies, Inc., a Delaware corporation with its principal place of business in California. Wickes hired an independent insurance broker in

COLLINS & AIKMAN CORP. v. HARTFORD ACCIDENT & INDEMNITY CO.

[335 N.C. 91 (1993)]

California to procure an insurance policy for the plaintiff. The broker negotiated with Hartford and procured an umbrella/excess liability policy.

The policy provided for $5,000,000 of insurance coverage in excess of a $2,000,000 primary policy issued by defendant Aetna Casualty and Surety Company. The policy period was from 1 March 1987 through 29 February 1988. The policy was sent to the insurance broker's office in California and remained there until 8 March 1988, at which time it was sent to the plaintiff's office in Charlotte, North Carolina. The plaintiff owned one hundred and two trucks of which ninety-seven were titled in North Carolina. The plaintiff's transportation division is located in Albemarle, North Carolina.

On 29 February 1988, one of the trucks which was titled in this state was involved in an accident in Yadkin County, North Carolina, in which two people were killed. In a wrongful death action growing from the accident, the jury awarded $2,500,000 in compensatory damages and $4,000,000 in punitive damages against the plaintiff in this case. The parties settled the case for $4,200,000.

The defendant Hartford denied that it was liable for any punitive damages and this action was commenced for a determination of the rights and liabilities of the parties. The superior court denied a motion for partial summary judgment by the plaintiff and allowed a motion for partial summary judgment by Hartford, holding that Hartford was not responsible for any recovery for punitive damages. The Court of Appeals reversed, holding that Hartford was liable for such a recovery. We allowed Hartford's petition for discretionary review.

*Parker, Poe, Adams & Bernstein, by Irvin W. Hankins, III and Josephine H. Hicks, for plaintiff-appellee.*

*Patterson, Dilthey, Clay & Bryson, by Ronald C. Dilthey, and Cranfill, Sumner & Hartzog, by Susan K. Burkhart, for defendant-appellant The Hartford Accident and Indemnity Company.*

WEBB, Justice.

[1] The first issue raised by this appeal involves the choice of law to be applied. Hartford contends that California law should be used in interpreting the insurance policy and that punitive

damages are not covered by the policy under the law of California. We agree with the Court of Appeals that this case is governed by N.C.G.S. § 58-3-1 which provides:

> All contracts of insurance on property, lives, or interests in this State shall be deemed to be made therein, and all contracts of insurance the applications for which are taken within the State shall be deemed to have been made within this State and are subject to the laws thereof.

The policy in this case protects the interest of plaintiff against having to pay damages for the wrongful acts of its agents. The insurance contract is deemed to have been made in North Carolina.

The appellant, relying on *Land Co. v. Byrd*, 299 N.C. 260, 261 S.E.2d 655 (1980), *Fast v. Gulley*, 271 N.C. 208, 155 S.E.2d 507 (1967) and *Bundy v. Commercial Credit Co.*, 200 N.C. 511, 157 S.E. 860 (1931), contends that the law of the state in which the last act in the making of a contract governs and that would be California in this case. None of these cases involved insurance policies and the implication of N.C.G.S. § 58-3-1 was not considered.

The North Carolina cases involving insurance contracts, *Connor v. Insurance Co.*, 265 N.C. 188, 143 S.E.2d 98 (1965), *Roomy v. Insurance Co.*, 256 N.C. 318, 123 S.E.2d 817 (1962) and *Keesler v. Insurance Co.*, 177 N.C. 394, 99 S.E. 97 (1919), upon which Hartford relies are distinguishable. *Keesler* involved a life insurance policy issued in Georgia to a resident of Georgia. No interest in North Carolina was involved. *Connor* and *Roomy* involved automobile liability policies on vehicles owned by residents of other states. The vehicle in each case was titled in another state and the insurance policy was purchased in another state. This Court held in each case, without any reference to N.C.G.S. § 58-3-1 or its predecessor, that the law of the states in which the policies were issued was the law that governed. It is the very few contacts with this state that distinguishes *Connor* and *Roomy* from this case.

Hartford also relies on *Hartford A. and I. Co. v. Delta and Pine Land Co.*, 292 U.S. 143, 78 L. Ed. 1178 (1934), in which the Supreme Court of the United States held that a Mississippi statute similar to N.C.G.S. § 58-3-1 violated the due process clause as the statute was applied in that case. In that case, the plaintiff had purchased an indemnity bond from the defendant in Tennessee where both parties had offices. A defalcation occurred in Missis-

**COLLINS & AIKMAN CORP. v. HARTFORD ACCIDENT & INDEMNITY CO.**

[335 N.C. 91 (1993)]

sippi. The United States Supreme Court reversed a decision by the Supreme Court of Mississippi which had held that Mississippi law governed. The Supreme Court said a state "may not, on grounds of policy, ignore a right which has lawfully vested elsewhere, if, as here, the interest of the forum has but slight connection with the substance of the contract obligations. Here performance at most involved only the casual payment of money in Mississippi." *Id.* at 150, 78 L. Ed. at 1181. We believe that is the distinction from this case. In this case, the State has much more than a casual connection with the substance of the insurance policy. Most of the vehicles insured were titled in this state and plaintiff's transportation division is located in this state.

The last two cases upon which Hartford relies are *Lowe's No. Wilkesboro Hardware v. Fidelity Mut. L. Ins. Co.*, 206 F. Supp. 427 (M.D.N.C. 1962) and *Turner v. Liberty Mut. Ins. Co.*, 105 F. Supp. 723 (E.D.N.C. 1952). *Lowe's* involved a choice of law question in an action in tort, the plaintiff having alleged that the defendant negligently failed to act on an application for a life insurance policy. A tort claim does not implicate N.C.G.S. § 58-3-1. *Lowe's* is not authority for this case.

In *Turner*, the United States District Court for the Eastern District of North Carolina held that a predecessor statute to N.C.G.S. § 58-3-1 did not require that the law of North Carolina govern in interpreting a motor vehicle liability policy when the policy was issued in New Jersey by a New Jersey corporation to a citizen of New Jersey. The motor vehicle was involved in an accident in North Carolina. The court cited *Delta and Pine Land Co.* and said it would violate the Fourteenth Amendment to allow the statute to require the law of a state to govern "regardless of the relative importance of the interests of the forum as contrasted with those created at the place of the contract." *Id.* at 726.

We believe that the distinction between this case and those cases upon which Hartford relies and which hold that N.C.G.S. § 58-3-1 or similar statutes do not apply or are unconstitutional, lies in the connection of this state with the interests insured. North Carolina has a close connection with the interests insured in this case. N.C.G.S. § 58-3-1 clearly means that the law of North Carolina applies and we do not believe the United States Constitution prohibits it.

**[2]**  Hartford contends that if North Carolina law applies it is not liable under the terms of the policy. The policy says:

> The company will pay on behalf of the **insured ultimate net loss** in excess of the total applicable limit . . . of **underlying insurance** . . . because of **bodily injury, personal injury, property damage** or **advertising injury** . . . .
>
> . . . .
>
> When used in reference to this insurance . . .:
>
> "**bodily injury**" means bodily injury, sickness or disease sustained by any person which occurs during the policy period;
>
> . . . .
>
> "**damages**" do not include fines or penalties . . .;
>
> . . . .
>
> "**ultimate net loss**" means all sums which the **insured** and his or her insurers shall become legally obligated to pay as **damages**
>
> . . . .

Hartford contends that the policy does not cover losses by the plaintiff for punitive damages. It says this is so because the policy insures for loss for "bodily injury, personal injury, property damage or advertising injury" and punitive damages in this case were not awarded for any of the injuries. Hartford argues that compensatory damages were awarded for the damages for bodily injury but punitive damages were not. It says the punitive damages were awarded for the bad conduct of the plaintiff's agent and not for damages for bodily injury. Hartford distinguishes *Mazza v. Medical Mut. Ins. Co.*, 311 N.C. 621, 319 S.E.2d 217 (1984), a medical malpractice case in which we held the insurance carrier was liable for punitive damages awarded against the defendant on the ground that in *Mazza* the policy provided coverage for all damages, which would include punitive damages. There is no such coverage in this case, says Hartford.

We hold that the policy in this case covers liability for punitive damages. If compensatory or nominal damages for bodily injury had not been recoverable by the personal representatives of the two estates in this case, the plaintiff could not have recovered punitive damages. *Hawkins v. Hawkins*, 331 N.C. 743, 417 S.E.2d 447 (1992). Punitive damages were recovered because of the recovery

**COLLINS & AIKMAN CORP. v. HARTFORD ACCIDENT & INDEMNITY CO.**

[335 N.C. 91 (1993)]

for bodily injuries to the deceased persons. This recovery is covered by the policy.

**[3]** Hartford next contends that punitive damages are penalties and thus not covered by the policy which defines damages as not to include "fines or penalties." Hartford relies on *Allred v. Graves*, 261 N.C. 31, 134 S.E.2d 186 (1964), to argue that punitive damages are penal in nature and should be construed as a penalty.

We do not believe *Allred* is authority for this case. In *Allred*, the plaintiff sued the defendants for assault and battery and prayed for punitive damages. The question before this Court was whether the privilege against self incrimination prevented the plaintiff from examining the defendants before trial. We said that "penalty is an elastic term with many different shades of meaning." *Id.* at 38, 134 S.E.2d at 192. We held that for purposes of exercising the privilege against self incrimination in that case, in which the defendants would be subject to arrest and bail if punitive damages were awarded, the defendants could not be examined before trial. The references to the definition of a penalty in a case involving the privilege against self incrimination are not authority for this case.

We agree with the Court of Appeals that "penalty" as used in the policy is at best ambiguous. This being so, we must interpret it against the insurer who wrote the policy. *Trust Co. v. Insurance Co.*, 276 N.C. 348, 172 S.E.2d 518 (1970). It takes some construing of the word "penalty" to hold that it includes punitive damages. This we cannot do.

For the reasons stated in this opinion, we affirm the Court of Appeals.

AFFIRMED.

Justice MEYER dissenting.

Contrary to the majority, I conclude that N.C.G.S. § 58-3-1 does not control the choice of law question here. Rather, I believe that the traditional rule of *lex loci contractus* applies, and thus, California law is the correct law to be applied in this case. Assuming *arguendo*, however, that North Carolina law is the correct choice, I conclude that the language of the policy does not cover awards of punitive damages, as the policy was limited to damages "because

of bodily injury" and excludes "fines and penalties" from recovery. I therefore dissent.

As the majority notes, Wickes Companies, Inc. ("Wickes"), a Delaware Corporation with its primary place of business and head-quarters in Santa Monica, California, is the parent company of Collins and Aikman Corporation ("C&A"). C&A is a Delaware Corporation, which at all times pertinent to the case before us was headquartered in New York City, with sixteen subsidiaries doing business in twenty-eight states, the Virgin Islands, and several foreign countries. It has administrative offices, sales offices, and warehouses throughout the United States. It operates thirty-four manufacturing plants that are located in New York, Indiana, North Carolina, Georgia, Oklahoma, Rhode Island, Texas, Quebec, and Ontario.

Wickes recommended that its subsidiary, C&A, use Marsh & McLennan, an independent insurance broker in Los Angeles, California, to negotiate an excess liability insurance policy. C&A had attempted to get a policy through Marsh & McLennan's office in North Carolina but had been unsuccessful. Marsh & McLennan began negotiations with Hartford Accident and Indemnity Company ("Hartford") to create an excess liability insurance policy for C&A. Hartford dealt almost exclusively with Marsh & McLennan's California office in creating the excess liability policy for C&A. In preparing the quotation, Hartford used information that indicated C&A was headquartered in New York City. The policy identified the named insured as Collins and Aikman, located at 210 Madison Avenue, New York, NY 10016. Hartford received the premium payment from Marsh & McLennan.

During the policy period, Hartford was potentially liable for the excess on actual claims filed against C&A for motor vehicle accidents in Louisiana, Georgia, Pennsylvania, Ohio, North Carolina, New Jersey, and New York.

The majority says that N.C.G.S. § 58-3-1 controls this case. The statute covers "all contracts of insurance on property, lives, or interests in this State . . . and all contracts of insurance the applications for which are taken within the State shall be deemed to have been made within this State." N.C.G.S. § 58-3-1 (1991). N.C.G.S. § 58-3-1 has been construed to apply when a policy of insurance covers lives, property, or tangible assets physically located in the state. However, I believe that N.C.G.S. § 58-3-1 does not

COLLINS & AIKMAN CORP. v. HARTFORD ACCIDENT & INDEMNITY CO.

[335 N.C. 91 (1993)]

apply here, where a contract is formed in either Connecticut or California and the application for the insurance came from California, C&A being unsuccessful in its attempt to get insurance through Marsh & McLennan's North Carolina office. The United States Supreme Court has noted that

> [a] legislative policy which attempts to draw to the state of the forum control over the obligations of contracts elsewhere validly consummated and to convert them for all purposes into contracts of the forum regardless of the relative importance of the interests of the forum as contrasted with those created at the place of the contract, conflicts with the guaranties of the Fourteenth Amendment.

*Hartford Accident & Indemnity Co. v. Delta & Pine Land Co.,* 292 U.S. 143, 150, 78 L. Ed. 1178, 1181-82, *reh'g denied,* 292 U.S. 607, 78 L. Ed. 1468 (1934).

Based on the fact that Hartford's policy is a nationwide policy that was created in Connecticut for a business headquartered in New York City, which covers claims in many states all over the nation and even in Canada and the Virgin Islands, I believe that the correct rule to apply in determining what law is applicable is the longstanding rule in North Carolina: *lex loci contractus,* that the substantive law of the state where the last act to make a binding contract takes place controls all aspects of the interpretation of contracts. *Land Co. v. Byrd,* 299 N.C. 260, 262, 261 S.E.2d 655, 656 (1980); *Bundy v. Commercial Credit Co.,* 200 N.C. 511, 516, 157 S.E. 860, 863 (1931).

On many occasions, this Court has applied this rule in determining what law should be applied in disputes over insurance contracts. In *Roomy v. Allstate Ins. Co.,* 256 N.C. 318, 123 S.E.2d 817 (1962), this Court adopted the rule that the interpretation of an insurance contract depends upon the law of the place where the policy is delivered. *See also Connor v. State Farm Mut. Auto. Ins. Co.,* 265 N.C. 188, 143 S.E.2d 98 (1965); *Keesler v. Mutual Benefit Life Ins. Co. of New York,* 177 N.C. 394, 99 S.E. 97 (1919).

The majority attempts to distinguish *Roomy, Keesler,* and *Connor* by arguing that the policy at issue here has a much greater causal connection to North Carolina than the cases in which this Court and the United States Supreme Court applied *lex loci contractus.* While I agree that in this case there are more connections

with North Carolina because a majority of the trucks are registered in North Carolina and C&A has manufacturing plants in North Carolina, I disagree that these connections, when looking at the policy as a whole, are enough to justify applying North Carolina law to this contract. As noted above, this policy covered not only trucks, but every other type of imaginable risk involving the business operations and products of C&A that could result in the injuries noted in the policy. C&A had thirty-four plants in seven states and two Canadian provinces. In addition, C&A had listed its headquarters as New York City at the time the policy was issued. During the policy term, there were nineteen accidents that potentially could have involved the Hartford excess policy; nine of these accidents were not in North Carolina. Finally, in neither *Roomy*, *Keesler*, nor *Connor* did we rely upon or even discuss that the number of contacts with North Carolina was determinative of the choice of law.

When reviewing the circumstances of the issuance of this policy and the contents of the policy itself, I fail to find enough connections with North Carolina to justify the application of N.C.G.S. § 58-3-1. I believe that *lex loci contractus* should apply and that the applicable law should be determined based upon the substantive law of the state where the last act creating a binding contract took place. In regard to insurance contracts, it is usually held that the delivery of the contract is the last act to make a binding contract. *Mutual Life Ins. Co. v. Johnson*, 293 U.S. 335, 339, 79 L. Ed. 398, 401 (1934). Here, the policy was mailed from Hartford, Connecticut, to Marsh & McLennan in Los Angeles, California, sometime in March of 1987. Marsh & McLennan had possession of the policy until 8 March 1988, by which time the accident in question had already occurred and the policy had expired. Because the contract was negotiated by, paid by, and delivered to Marsh & McLennan in Los Angeles and because the policy covers so many different interests around the United States and the world, I believe that the proper choice of law is California, which is the state where the last act to make a binding contract (the delivery of the policy) took place. In California, punitive damages are uninsurable as a matter of public policy; thus, the plaintiff here would not be able to recover punitive damages from Hartford under its policy of insurance. *State Farm Fire & Cas. Co. v. Superior Court*, 191 Cal. App. 3d 74, 77-78, 236 Cal. Rptr. 216, 219 (1987). In addition, here the policy itself states that "damages" do not include damages

**COLLINS & AIKMAN CORP. v. HARTFORD ACCIDENT & INDEMNITY CO.**

[335 N.C. 91 (1993)]

for which insurance is prohibited by the law applicable to the construction of the policy.

Assuming *arguendo*, however, that North Carolina law applies, Hartford's policy still affords no coverage for punitive damages. Punitive damages, quite simply, are not awarded "because of bodily injury." Punitive damages are awarded solely to punish the wrongdoer for his outrageous conduct. *Oestreicher v. Stores*, 290 N.C. 118, 134, 225 S.E.2d 797, 807 (1976). In *Cavin's Inc. v. Atlantic Mut. Ins. Co.*, 27 N.C. App. 698, 220 S.E.2d 403 (1975), the Court of Appeals held that the liability insurance policy in question did not afford coverage for punitive damages. In *Cavin's*, the policy defined "damages" to mean only those payable "because of a personal injury." The Court of Appeals explained that punitive damages were not payable because of personal injury, stating:

> Punitive damages are never awarded merely because of a personal injury inflicted nor are they measured by the extent of the injury; they are awarded because of the outrageous nature of the wrongdoer's conduct. Being awarded solely as punishment to be inflicted on the wrongdoer and as a deterrent to prevent others from engaging in similar wrongful conduct, punitive damages can in no proper sense be considered as being awarded "only with respect to personal injury" or as damages "which are payable because of personal injury." Compensatory damages, which are awarded to compensate and make whole the injured party and which are therefore to be measured by the extent of the injury, are the only damages which are payable "because of personal injury."

*Id.* at 702, 220 S.E.2d at 406.

In addition, this Court has interpreted the phrase "damages sustained" to not include punitive damages. In *Transportation Co. v. Brotherhood*, 257 N.C. 18, 125 S.E.2d 277, *cert. denied*, 371 U.S. 862, 9 L. Ed. 2d 100, *reh'g denied*, 371 U.S. 899, 9 L. Ed. 2d 131 (1962), we held that

> [d]amages sustained are limited to actual damages suffered as a result of the wrong inflicted. Punitive damages are never awarded as compensation. They are awarded above and beyond actual damages, as a punishment for the defendant's intentional wrong. They are given to the plaintiff in a proper case, not because they are due, but because of the opportunity the case

COLLINS & AIKMAN CORP. v. HARTFORD ACCIDENT & INDEMNITY CO.

[335 N.C. 91 (1993)]

affords the Court to inflict punishment for conduct intentionally wrongful.

*Id.* at 30, 125 S.E.2d at 286 (citation omitted).

The Court of Appeals, relying on *Transportation Co. v. Brotherhood,* determined that the phrase "damages *because of bodily injuries*" did not include punitive damages. *Nationwide Mut. Ins. Co. v. Knight,* 34 N.C. App. 96, 100-01, 237 S.E.2d 341, 345, *disc. rev. denied,* 293 N.C. 589, 239 S.E.2d 263 (1977) (emphasis added). In addition, numerous courts in other jurisdictions support the view that punitive damages are not damages "because of bodily injury." *See Union Ins. Co. v. Kjeldgaard,* 775 P.2d 55, 56 (Colo. Ct. App. 1988); *Brown v. Western Cas. & Surety Co.,* 484 P.2d 1252, 1253 (Colo. Ct. App. 1971); *Braley v. Berkshire Mut. Ins. Co.,* 440 A.2d 359, 361 (Me. 1982); *Caspersen v. Webber,* 298 Minn. 93, 100, 213 N.W.2d 327, 331 (1973); *Schnuck Markets, Inc. v. Transamerica Ins. Co.,* 652 S.W.2d 206, 209-10 (Mo. Ct. App. 1983); *Crull v. Gleb,* 382 S.W.2d 17, 23 (Mo. Ct. App. 1964); *Creed v. Allstate Ins. Co.,* 365 Pa. Super. 136, 141, 529 A.2d 10, 12 (1987), *appeal denied,* 517 Pa. 616, 538 A.2d 499 (1988); *Laird v. Nationwide Ins. Co.,* 243 S.C. 388, 397, 134 S.E.2d 206, 210 (1964). The policy here was for damages "because of bodily injury"; thus, the policy does not cover punitive damages.

It is true that this Court has concluded that when a policy is written to cover "all damages, including damages for death, which are payable because of injury to which this insurance applies," punitive damages may be included in the recovery. *Mazza v. Medical Mut. Ins. Co.,* 311 N.C. 621, 629, 631, 319 S.E.2d 217, 222, 223 (1984). In *Mazza,* the policy provided medical malpractice coverage for "[a]ny claim . . . arising out of the performance of professional services rendered." *Id.* at 623, 319 S.E.2d at 219. Thus, in *Mazza,* the insurer chose to define damage coverage by the cause of the damage (professional services) not by the effect on the injured party (bodily injury). Thus, *Mazza* can be distinguished from the case at hand because here, the damages that may be recovered have been limited to damages incurred "because of bodily injury."

In determining that the policy in *Mazza* provided for punitive damages awarded on account of medical malpractice, this Court carefully and expressly distinguished the Court of Appeals cases

that held that policies do not cover punitive damages. This Court noted:

> A careful examination of the insurance contracts, factual situations, and holdings in *Cavin's* and *Knight* convinces us that these two cases are clearly distinguishable from the case *sub judice*, and are not any legal precedent upon which to base a decision favorable to the defendant Medical Mutual. In other words, neither *Cavin's* nor *Knight* control in this situation.

*Mazza*, 311 N.C. at 631, 319 S.E.2d at 223.

The policy at issue here contains language identical to that found in *Knight* and similar to that in *Cavin's*; thus, it seems that *Mazza*, which held *Cavin's* and *Knight* distinguishable, should not apply to this case. The policy at issue here is simply not as broad as that found in *Mazza* because Hartford included the limiting phrase "because of bodily injury" in its definition of damages covered. Thus, Hartford should not be required to pay the punitive damages awarded in this case.

The majority relies on *Hawkins v. Hawkins*, 331 N.C. 743, 417 S.E.2d 447 (1992), for the proposition that if the plaintiff is entitled to recover compensatory damages for bodily injury, the plaintiff can also recover punitive damages. I do not find *Hawkins* apposite here. In *Hawkins*, we did not condition the recovery of punitive damages on the recovery of compensatory damages; in fact, we allowed punitive damages when no compensatory damages were awarded. *Hawkins*, which incidentally was an assault and battery case and had nothing whatsoever to do with an insurance contract, merely establishes that the recovery of punitive damages is not dependent on the recovery of compensatory damages, whether for bodily injury or any other injury or damage.

Furthermore, Hartford should not be liable for punitive damages here because Hartford's policy defines "damages" not to include fines or penalties. This Court has held that "ambiguity in the terms of an insurance policy is not established by the mere fact that the plaintiff makes a claim based upon a construction of its language which the company asserts is not its meaning." *Wachovia Bank & Trust Co. v. Westchester Fire Ins. Co.*, 276 N.C. 348, 354, 172 S.E.2d 518, 522 (1970). Where a nontechnical term such as "penalty" is not defined in the policy, the court should give the term its ordinary meaning. *Grant v. Emmco Ins. Co.*, 295 N.C. 39, 42, 243 S.E.2d 894, 897 (1978). "Penalty" is defined as "[a] punishment

established by law or authority for a crime or an offense," *The American Heritage Dictionary of the English Language* 1337 (3d ed. 1992); "punitive damages" are "[d]amages awarded by a court against a defendant as a deterrent or punishment to redress an egregious wrong perpetrated by the defendant," *id.* at 1469. Thus, punitive damages come within this definition of the term "penalty."

In *America Home Assurance Co. v. Fish*, 122 N.H. 711, 715, 451 A.2d 358, 360 (1982), the court found that where losses that include "fines and penalties imposed by law" are excluded from coverage, punitive damages are not covered within the policy. *See also Northwestern Nat'l Cas. Co. v. McNulty*, 307 F.2d 432, 436 (5th Cir. 1962) (Florida characterization of punitive damages as a "penalty" conforms with the most widely accepted basis for punitive damages in other American jurisdictions).

The interpretation of punitive damages as a fine or penalty is supported by the United States Supreme Court, which has found that a jury may inflict what are called exemplary, punitive, or vindictive damages " 'by means of a civil action, and the damages, inflicted by way of *penalty* or punishment, [are] given to the party injured.' " *Pacific Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 16, 113 L. Ed. 2d 1, 18 (1991) (quoting *Day v. Woodworth*, 54 U.S. (13 How.) 363, 371, 14 L. Ed. 181, 185 (1851) ). The United States Supreme Court has also held that punitive damages are not compensation for injury but, rather, are " 'private fines levied by civil juries to punish reprehensible conduct and to deter its future occurrence.' " *International Broth. of Elec. Workers v. Foust*, 442 U.S. 42, 48, 60 L. Ed. 2d 698, 704 (1979) (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 350, 41 L. Ed. 2d 789, 811 (1974) ).

I conclude that giving the terms "penalty" and "fine" their ordinary meanings, they include punitive damages. As such, it is clear that the exclusion of fines and penalties would exclude punitive damages.

The majority errs in determining that the policy should be interpreted under North Carolina law, and even assuming *arguendo* that the majority was correct in its choice of law, the language of the policy does not cover awards of punitive damages. I vote to reverse the decision of the Court of Appeals.

Chief Justice Exum and Justice Parker join in this dissenting opinion.