PHYLLIS A. MARTIN, and TITUS M. MARTIN, Plaintiffs v. THE CONTINENTAL INSURANCE CO., ALLSTATE INSURANCE COMPANY, and KENNETH WAYNE MILLER, Defendants

No. COA95-633

(Filed 3 September 1996)

**1. Insurance § 99 (NCI4th)— fleet policy—insurer's close connections with N.C.—applicability of N.C. law**

The fleet policy of insurance issued, applied for, and delivered by defendant to plaintiff's employer in Kansas was governed by North Carolina law via our "close connections" rule, since defendant insured 1,479 of the employer's vehicles registered and used in North Carolina. N.C.G.S. § 58-3-1.

**Am Jur 2d, Automobile Insurance § 235.**

**Choice of law as to validity of other insurance clause of uninsured motorist coverage. 83 ALR3d 221.**

**Conflict of laws in determination of coverage under automobile liability insurance policy. 20 ALR4th 738.**

MARTIN v. CONTINENTAL INS. CO.

[123 N.C. App. 650 (1996)]

**2. Insurance § 510 (NCI4th)— rejection of UIM coverage— Rate Bureau form required—applicability to fleet policies**

Defendant insurer was required to utilize the UIM rejection form promulgated by the Rate Bureau to effect a rejection of UM/UIM coverage, and there was no merit to defendant's contention that the form did not have to be used because the policy at issue was a fleet policy beyond the jurisdiction of the Rate Bureau.

**Am Jur 2d, Automobile Insurance §§ 304-310.**

**Construction and application of statute designed to prevent avoidance of liability policy by reason of violation of its exclusions, conditions or other terms. 1 ALR2d 822.**

Appeal by plaintiffs from summary judgment entered 4 January 1993 by Judge W. Russell Duke, Jr., in Lenoir County Superior Court. Heard in the Court of Appeals 28 February 1996.

*Whitley, Jenkins & Associates, by Robert E. Whitley, for plaintiff appellants.*

*Wallace, Morris, Barwick & Rochelle, P.A., by P.C. Barwick, Jr., for defendant appellee Allstate Insurance Company.*

*Morris York Williams Surles & Brearley, by John F. Morris and Richard M. Chamberlain, for defendant appellee Continental Insurance Company.*

SMITH, Judge.

In this declaratory judgment action, plaintiffs appeal the trial court's determination that plaintiff Phyllis Martin (Martin) was not afforded underinsured motorist (UIM) or uninsured motorist (UM) coverage through a fleet policy of insurance issued by defendant Continental Insurance Company (Continental) to Martin's employer. Two issues are presented by this appeal. The first question concerns whether the fleet policy at hand is governed by North Carolina or Kansas substantive law. We hold, pursuant to clear and controlling precedent, that the instant policy is governed by North Carolina law via our "close connections" rule. *Collins & Aikman Corp. v. Hartford Accident & Indemnity Co.*, 106 N.C. App. 357, 416 S.E.2d 591 (1992), *aff'd*, 335 N.C. 91, 436 S.E.2d 243 (1993); and *see Johns v. Automobile Club Ins. Co.*, 118 N.C. App. 424, 455 S.E.2d 466, *disc. review denied*, 340 N.C. 568, 460 S.E.2d 318 (1995).

The second question concerns whether defendant Continental was required to utilize the UIM rejection form promulgated by the Rate Bureau to effect a rejection. Defendant Continental argues that, because the policy at issue was a "fleet policy," beyond the "jurisdiction" of the Rate Bureau, such form did not have to be utilized. This argument is without merit, as there is unequivocal precedent to the opposite effect. *Hendrickson v. Lee*, 119 N.C. App. 444, 459 S.E.2d 275 (1995); and *see Vasseur v. St. Paul Insurance Co.*, 1996 WL 445115 (N.C. App.) (filed 6 August 1996, No. COA95-458). As both of defendants' arguments are controlled by established precedent to the contrary, summary judgment was erroneously granted defendant Continental. Accordingly, we reverse.

The pertinent facts are as follows. Plaintiff Phyllis Martin was operating an automobile when she was struck and injured by a vehicle driven by defendant Kenneth Miller. Defendant Miller's vehicle was insured by North Carolina Farm Bureau Mutual Insurance Company (Farm Bureau) under a liability policy for damages up to $100,000.00. At the moment of collision, plaintiff Martin was operating a vehicle owned by her employer, Carolina Telephone and Telegraph Company (Carolina Telephone). The Carolina Telephone automobile was insured for damages up to $1,000,000.00 per accident under a policy issued by Continental. Plaintiffs were also insured through a personal automobile policy issued by Allstate Insurance Company (Allstate), which included UIM coverage up to $100,000.00 per person.

On or about 17 June 1991, Farm Bureau paid the limits of defendant Miller's policy to plaintiff Martin in the amount of $100,000.00. Thereafter, Martin sued Miller in tort. Prior to trial, defendant Continental moved for summary judgment on the issue of its potential liability to Martin for UIM and/or uninsured motorist (UM) coverage. At a pretrial hearing on defendant's motion, Judge W. Russell Duke, Jr., determined that Continental was not liable, and granted summary judgment in its favor on this issue. Plaintiffs attempted to appeal this ruling, but the appeal was dismissed as interlocutory. *Martin v. Continental Ins. Co.*, 113 N.C. App. 655, 441 S.E.2d 189 (1994).

Thereafter, a jury trial was held on Martin's claim with Judge G.K. Butterfield presiding. On 14 December 1994, the jury awarded plaintiff $234,000.00 as damages for her injuries. Pursuant to this judgment, Judge James D. Llewellyn entered an order on 17 March 1995

MARTIN v. CONTINENTAL INS. CO.

[123 N.C. App. 650 (1996)]

directing Allstate to provide excess UIM coverage to plaintiff (per the provisions of her personal policy) up to its limit of $100,000.00.

Plaintiffs had thus exhausted defendant Miller's liability policy coverage with Farm Bureau, and their own UIM coverage with Allstate. This left an amount in excess of $34,000.00 outstanding on the judgment. The remaining issue, and the genesis of this appeal, is whether summary judgment was properly granted to Continental extricating it from UIM coverage liability on the judgment.

---

The Carolina Telephone automobile was covered by a policy of insurance issued by defendant Continental Insurance. The named insured on the Continental policy was United Telecommunications, Inc., the parent corporation of Carolina Telephone. Continental's policy provided liability coverage up to $1,000,000.00 for each of the 8,282 vehicles owned or leased by United Telecommunications *or its subsidiaries*. Of the 8,282 vehicles, 1,479 were registered, located, and used for business purposes within the State of North Carolina at the time the Continental contract of insurance was issued.

Incorporated into the Continental policy was an exclusion of coverage entitled "Endorsement #11." This endorsement stated that United Telecommunications,

> [i]n consideration of the premium at which this policy is written, [United Telecommunications agrees] that the insured has rejected uninsured/underinsured coverage where permitted by law and uninsured/underinsured coverage is otherwise provided at minimum limits as provided by law.

In exchange for execution of this endorsement (purportedly) rejecting UIM/UM coverage, United Telecommunications received a reduction in premium.

On a motion for summary judgment, the burden is on the moving party (here, defendant Continental) to establish that there is no triable issue of fact and entitlement to judgment as a matter of law. N.C. Gen. Stat. § 1A-1, Rule 56(c) (1990); *Page v. Sloan*, 281 N.C. 697, 705, 190 S.E.2d 189, 193 (1972). On appellate review, the moving party's papers are carefully scrutinized while those of the nonmoving party are indulgently regarded. *Sanyo Electric, Inc. v. Albright Distributing Co.*, 76 N.C. App. 115, 117, 331 S.E.2d 738, 739, *disc. review denied*, 314 N.C. 668, 335 S.E.2d 496 (1985).

MARTIN v. CONTINENTAL INS. CO.

[123 N.C. App. 650 (1996)]

## I. Choice of Law: Kansas or North Carolina

[1] Defendant Continental argues that, since the instant policy was applied for, issued and delivered to United Telecommunications in the State of Kansas, and the intent of the parties (according to Continental) was that Kansas law would govern, Kansas law should dispose of the issues presented by this appeal. Applying North Carolina law to the instant policy, defendant contends, would violate due process. Defendant is mistaken.

Continental argues that either the doctrine of *lex loci contractus*, or alternatively "the intent of the parties," should govern interpretation of the Continental policy. *See Tolaram Fibers, Inc. v. Tandy Corp.*, 92 N.C. App. 713, 717, 375 S.E.2d 673, 675, *disc. review denied*, 324 N.C. 436, 379 S.E.2d 249 (1989); and *see Tanglewood Land Co. v. Byrd*, 299 N.C. 260, 262, 261 S.E.2d 655, 656 (1980) (the substantive law of the state where the last act required to make a binding contract takes place controls all aspects of the interpretation of the contract); *Duke Power v. Blue Ridge Elec. Membership Co.*, 253 N.C. 596, 602, 117 S.E.2d 812, 816 (1961) (contracts are to be interpreted by the Court according to the intent of the parties to the contract). Continental argues that failure of this Court to follow one of these two doctrines, in this factual situation, would implicate due process. We disagree, and hold that neither of the choice of law approaches urged by defendant Continental are appropriate to the facts and legal context of this case.

In *Collins & Aikman v. Hartford Accident & Indemnity*, 335 N.C. 91, 95, 436 S.E.2d 243, 246 (1993), our Supreme Court rejected arguments identical to those defendant now asserts. In *Collins*, the plaintiff-corporation (Collins & Aikman) owned one hundred and two trucks, ninety-seven of which were titled in North Carolina. Collins & Aikman was a wholly-owned subsidiary of Wickes Companies, Inc. (Wickes), a Delaware corporation with its principal place of business in California. Wickes engaged an insurance broker in California to procure an insurance policy for its subsidiary company, Collins & Aikman.

The *Collins* defendant, Hartford Indemnity Insurance Company (Hartford), issued Wickes an excess liability policy which was sent to Wickes' insurance broker in California, who then sent it to Collins & Aikman's corporate offices in North Carolina. *Id.* at 93, 436 S.E.2d at 244. Thereafter, an accident occurred involving one of Collins & Aikman's insured vehicles, with damages exceeding the limits of

Collins & Aikman's primary coverage. Collins & Aikman asserted that Hartford was liable for the remaining damages pursuant to its excess coverage policy. *Id.* at 93, 436 S.E.2d at 244-45.

The *Collins* Court determined that N.C. Gen. Stat. § 58-3-1 (1994) governed the business automobile policy at issue. *Id.* at 94, 436 S.E.2d at 245. N.C. Gen. Stat. § 58-3-1 states:

> All contracts of insurance on property, lives, or interests in this State shall be deemed to be made therein, and all contracts of insurance the applications for which are taken within the State shall be deemed to have been made within this State and are subject to the laws thereof.

Hartford argued that applying § 58-3-1 to the Collins policy would violate due process, since "the interest of the forum has but slight connection with the substance of the contract obligations." *Collins*, 335 N.C. at 95, 436 S.E.2d at 245 (quoting *Hartford A. and I. Co. v. Delta and Pine Land Co.*, 292 U.S. 143, 150, 78 L.Ed. 1178, 1181, *reh'g denied*, 292 U.S. 607, 78 L.Ed. 1468 (1934).

The *Collins* Court disagreed with Hartford's due process argument, holding that, "[North Carolina] has much more than a casual connection with the substance of the insurance policy." *Id.* The *Collins* Court also considered the analysis and holding of *Turner v. Liberty Mut. Ins. Co.*, 105 F.Supp. 723, 726 (E.D.N.C. 1952), wherein the *Turner* Court applied a due process analysis to the predecessor statute to § 58-3-1 in a motor vehicle liability case. *Collins*, 335 N.C. at 95, 436 S.E.2d at 245-46. The *Turner* Court held that it would violate due process to allow our predecessor statute to govern the issues present there without " 'regard[] [to] the relative importance of the interests of the forum as contrasted with those [interests] created at the place of the contract." *Id.* (quoting *Turner*, 105 F.Supp. at 726).

After considering a panoply of cases asserted by Hartford, the *Collins* Court concluded:

> We believe that the distinction between this case and those cases upon which Hartford relies and which hold that N.C.G.S. § 58-3-1 or similar statutes do not apply or are unconstitutional, lies in the connection of this state with the interests insured. North Carolina has a **close connection** *with the interests insured* in this case. N.C.G.S. § 58-3-1 clearly means that the law of North Carolina applies and we do not believe the United States Constitution prohibits it.

*Collins,* 335 N.C. at 95, 436 S.E.2d at 246 (emphasis added). Applying this close connections rule, the *Collins* Court held that the ninety-seven trucks titled by Collins & Aikman in North Carolina, and insured by Hartford, bore more than a casual connection to this state. *Id.* at 95, 436 S.E.2d at 246.

Defendant Continental's argument against applicability of the *Collins* close connections rule to the instant facts consists of recapitulations of the *Hartford* and *Turner* holdings, and the *Collins* dissent. Continental argues *Collins* does not apply here, because only approximately eighteen percent (17.858%) of United Telecommunications' automobiles are registered in North Carolina, whereas in *Collins,* plaintiff Collins & Aikman had titled ninety-five percent (95%) of its vehicles within this state. *See Collins,* 335 N.C. at 93, 436 S.E.2d at 244. Defendant's attempt to pivot this Court's determination of close connections on the basis of mere percentages is erroneous.

Though Collins & Aikman titled 95% of its vehicles in North Carolina, that percentage represented only ninety-seven vehicles. In the instant matter, United Telecommunications registered 1,479 vehicles in this state, for a comparatively low 17.858% of the total number insured through the Continental policy. A high percentage figure of insured cars registered within North Carolina, versus a low percentage figure of those registered without, is not in and of itself determinative. The *Collins* Court did not intend to measure the quantum of a § 58-3-1 close connection through the abstraction of percentages versus percentages. To do so would lead to absurd and unintended consequences. Instead, the *Collins* Court concerned its analysis with the close connection between North Carolina and the "interests insured" by the motor vehicle policy. *Collins,* 335 N.C. at 95, 436 S.E.2d at 246.

The interests insured in *Collins* are the same interests which are insured here—motor vehicles and persons injured—that are covered by the insuring policy. *Collins,* 335 N.C. at 93, 96, 436 S.E.2d at 244, 246; *Johns,* 118 N.C. App. at 427, 455 S.E.2d at 468. Thus, *Collins* compels the conclusion that Continental's policy is governed by North Carolina law. In *Collins,* 97 vehicles were held to constitute a close connection. *Collins,* 335 N.C. at 96, 436 S.E.2d at 244. Here, defendant Continental insured 1,479 vehicles registered in North Carolina. Put in defendant Continental's percentage terminology, the number of North Carolina registered vehicles insured by Continental was over fifteen times the number insured by the *Collins* defendant.

**MARTIN v. CONTINENTAL INS. CO.**

[123 N.C. App. 650 (1996)]

In *Johns*, the only connection between the insurance policy there and North Carolina was the *situs* of the accident. *Johns*, 118 N.C. App. at 427, 455 S.E.2d at 468. The insured party in *Johns* secured the automobile policy in Tennessee, resided there, and was travelling east on Interstate 26 in Buncombe County when the accident occurred. *Id.* at 425, 427, 436 S.E.2d at 467, 468. "[T]hus, the accident [was] the only contact the parties had with North Carolina." *Id.* at 427, 436 S.E.2d at 468. In its analysis, the *Johns* Court determined that no more than a "casual" connection existed between the interests insured and North Carolina, and thus Tennessee law applied. *Id.* at 428, 436 S.E.2d at 469.

In contrast to the vehicle involved in *Johns*, and the 97 insured vehicles involved in *Collins*, the instant defendant insured at least 1,479 vehicles which were registered and used in North Carolina. Our comparison of absolute numbers, rather than percentages, offers a true insight into the connections between the insured interests under the instant policy and the forum state North Carolina. Our application of *Collins* to these facts in no way offends due process. *Collins*, 335 N.C. at 95, 436 S.E.2d at 245-46; and *see* Richard A. Posner, *Due Process Limitations on Personal Jurisdiction*, in *Economic Analysis of Law* § 25.5 (4th ed. 1992). Defendant Continental's approach to determining when close connections exist conflicts with the established meaning and public policy behind § 58-3-1, and would render virtually meaningless the protections intended by our Motor Vehicle Safety and Financial Responsibility Act. *See* N.C. Gen. Stat. § 20-279.21, *et seq.* (1993); *Collins*, 335 N.C. at 94, 436 S.E.2d at 245; *Nationwide v. Mabe*, 342 N.C. 482, 493-94, 467 S.E.2d 34, 41 (1996).

Under defendant's approach, insurance companies would be free to obtain insurance for vast numbers of automobiles in this state, at the lower premiums dictated by the less stringent laws of other states, thereby avoiding the protections intended by our legislature. We decline to follow such a course. North Carolina law applies to the Continental policy, and the question of Continental's use of Endorsement #11 as an attempted UIM rejection is properly before us for review on the merits.

## II. Rejection of UM/UIM Coverage by Collins & Aikman

[2] Our discussion here is limited to consideration of defendant Continental's UIM rejection arguments which are relevant to *North Carolina* law. Because neither party raises it, we do not address the underlying matter of plaintiff's interpolicy stacking of her personal

nonfleet policy (issued by Allstate Insurance Company) with the UIM coverage afforded by the fleet policy of her employer. *See Nationwide v. Mabe*, 342 N.C. at 498, 467 S.E.2d at 43 (as modified in substantive part by Order of the Supreme Court entered 1 May 1996) (allowing stacking of a fleet policy on a passenger type vehicle with a nonfleet policy); *Isenhour v. Universal Underwriters Ins. Co.*, 341 N.C. 597, 603, 461 S.E.2d 317, 320 (citations omitted) ("the interpolicy stacking of fleet and nonfleet policies is permissible"), *(reaffirming, Sutton v. Aetna Casualty & Surety Co.*, 325 N.C. 259, 382 S.E.2d 759, *reh'g denied*, 325 N.C. 437, 384 S.E.2d 546 (1989)), *reh'g denied*, 342 N.C. 197, 463 S.E.2d 237 (1995).

Defendant acknowledges that the rejection language used in the United Telecommunications policy was not "on a form promulgated by the North Carolina Rate Bureau." Defendant argues that the instant rejection is "valid and binding because it clearly and unambiguously rejects uninsured and underinsured motorists coverage." This argument is beside the point, as it ignores the fact that,

> [i]n *Hendrickson*, this Court strictly enforced the requirement that UIM coverage may be rejected only "in writing . . . on a form promulgated by the North Carolina Rate Bureau and approved by the Commissioner of Insurance," . . . in order to "assure compensation of the innocent victims of uninsured or underinsured drivers"—the primary purpose of the Act.

*Vasseur*, 1996 W.L. 445115, *3 (quoting *Hendrickson v. Lee*, 119 N.C. App. 444, 450, 457, 459 S.E.2d 275, 279, 283 (1995)).

The statute which governs the instant UIM coverage issue is the version of N.C. Gen. Stat. § 20-279.21(b)(4) in effect at the time the Continental policy was issued. *See White v. Mote*, 270 N.C. 544, 555, 155 S.E.2d 75, 82 (1967) ("Laws in effect at the time of issuance of a policy of insurance become a part of the contract . . . ."). Moreover,

> [w]hen a statute is applicable to the terms of an insurance policy, the provisions of the statute become a part of the policy, *as if written into it*. If the terms of the statute and the policy conflict, the statute prevails.

*Isenhour*, 341 N.C. at 605, 461 S.E.2d at 322 (emphasis added).

It is undisputed that the version of N.C. Gen. Stat. § 279.21(b)(4) applicable to the instant policy is that which was in effect in 1988, which is the identical statute under review in *Hendrickson*.

MARTIN v. CONTINENTAL INS. CO.

[123 N.C. App. 650 (1996)]

*Hendrickson*, 119 N.C. App. at 449, 459 S.E.2d at 278; and *see* N.C. Gen. Stat. § 20-279.21(b)(4) (1988).

N.C. Gen. Stat. § 20-279.21(b)(4) (1988) provided as follows at the time of plaintiff's accident:

(b) Such owner's policy of liability insurance:

\* \* \* \*

(4) Shall . . . provide underinsured motorist coverage, to be used only with policies that are written at limits that exceed those pre-scribed by subdivision (2) [i.e. $25,000.00/$50,000.00] of this sec-tion and that afford uninsured motorist coverage as provided by subdivision (3) of this subsection, *in an amount equal to the policy limits for automobile bodily injury liability as specified in the owner's policy.*

\* \* \* \*

The coverage required under this subdivision shall not be applicable where any insured named in the policy rejects the coverage.

. . . Rejection of this coverage for policies issued after October 1, 1986, *shall* be made in writing by the named insured on a form promulgated by the North Carolina Rate Bureau and approved by the Commissioner of Insurance.

(Emphasis added); *and see Hendrickson*, 119 N.C. App. at 449-50, 459 S.E.2d at 278-79. We note that Continental's policy with United Telecommunications has liability limits of $1,000,000.00 per person.

Given the benefit of *Hendrickson* and *Isenhour*, and the plain lan-guage of N.C. Gen. Stat. § 20-279.21(b)(4), defendants' attempts to distinguish *Hendrickson* because the Continental policy was written out of state, and because the instant policy insured a fleet vehicle, are without merit.

We find this paragraph from *Hendrickson* unambiguous:

We observe first that the version of G.S. § 20-279.21(b)(4) in effect in 1990 provided that rejection of UIM coverage "shall" be in writing and on "*a form promulgated by the Rate Bureau* and approved by the Commissioner of Insurance." *The language "shall" as applied in Chapter 20 of the North Carolina Motor*

*Vehicle Statutes, is "mandatory"* and not merely "formal" and "directory language." Again, as of the date of plaintiff's accident, only a single form complied with the statutory directives.

*Hendrickson*, 119 N.C. App. at 454, 459 S.E.2d at 281 (emphasis added) (citations omitted). By defendant's own admission, Endorsement #11 was not completed on a "form promulgated by the Rate Bureau." *Id.* Defendant's argument is thus completely at odds with the above language from *Hendrickson*.

Defendant Continental also contends that, because the policy at issue was a fleet policy, *i.e.*, one that covers more than four vehicles, the Rate Bureau had no jurisdiction and "no authority or control over this policy." *See Sutton v. Aetna Casualty & Surety Co.*, 325 N.C. 259, 266, 382 S.E.2d 759, 763 ("A fleet policy is a single policy designed to provide coverage for a multiple and changing number of motor vehicles used in an insured's business"), *reh'g denied*, 325 N.C. 437, 384 S.E.2d 546 (1989); and *see* N.C. Gen. Stat. § 58-40-10 (1994). This "jurisdiction" argument is identical to the position taken by the insurer-defendant in *Hendrickson*, to wit:

> PMA's second primary contention is that failure to utilize a rejection form *identical* to that promulgated by the Rate Bureau did not operate to invalidate Sovran's alleged rejection of UIM liability limits coverage. More particularly, PMA claims that the policy at issue did not fall within the *jurisdiction* of the Rate Bureau, *see* N.C. Gen. Stat. § 58-36-1 (1994), and thus use of the precise form promulgated by the Rate Bureau was not required.

*Hendrickson*, 119 N.C. App. at 455, 459 S.E.2d at 281 (emphasis added and in original).

The *Hendrickson* Court summarily rejected this argument, by straightforwardly holding that,

> [b]y requiring rejection of UIM coverage to be accomplished by use of a specific Rate Bureau form, G.S. § 20-279.21(b)(4) *was not effectively conferring additional jurisdictional authority* to the Rate Bureau. Rather, the statute appears merely to have been concerned with avoiding confusion and ambiguity through the use of a single standard and approved form. Stated otherwise, we disagree with PMA's conclusion that interpreting the relevant version of G.S. § 20-279.21(b)(4) as *mandating* use of a Rate Bureau form for rejection of UIM coverage within a fleet policy necessarily conflicts with G.S. § 58-36-1.

*Id.* at 456, 459 S.E.2d at 282 (emphasis added); *see also Vasseur*, 1996 WL 445115 at *3. The posture and facts of this case are identical in every material sense to the facts in *Hendrickson.*

Defendant Continental's brief does no more than restate the arguments posed by the insurer-defendant in *Hendrickson.* Therefore, our result is no different, and Continental's " 'UIM coverage must be in an amount equal to the policy limits for bodily injury liability specified in the policy.' " *Hendrickson*, 119 N.C. App. at 450, 459 S.E.2d at 279 (quoting *Smith v. Nationwide Mut. Ins. Co.*, 328 N.C. 139, 147, 400 S.E.2d 44, 50, *reh'g denied*, 328 N.C. 577, 403 S.E.2d 514 (1991)). For the reasons discussed, we hold that Continental's policy affords $1,000,000.00 in UIM coverage to plaintiff, and summary judgment for Continental is reversed. The trial court's denial of plaintiffs' motion for summary judgment is reversed and remanded for a new hearing.

Reversed and remanded.

Judges GREENE and LEWIS concur.