**COLLINS & AIKMAN CORP. v. HARTFORD ACCIDENT & INDEMNITY CO.**

[106 N.C. App. 357 (1992)]

COLLINS & AIKMAN CORPORATION v. THE HARTFORD ACCIDENT & INDEMNITY COMPANY, AND AETNA CASUALTY AND SURETY COMPANY

No. 9126SC451

(Filed 2 June 1992)

1. **Insurance § 149 (NCI3d) — general liability insurance — insurance of interest in N.C. — N.C. law governs**

   The laws of North Carolina govern the construction of a general liability insurance policy where the policy application was not taken in North Carolina but the policy insured an interest in North Carolina. Liability insurance by its very nature protects an interest of the insured in that it shields the insured from being required to make any payment on a claim for which he is liable, and the policy insures an interest in North Carolina because North Carolina is a principal location of a risk insured by the policy. N.C.G.S. § 58-3-1.

   **Am Jur 2d, Insurance § 341.**

2. **Insurance § 149 (NCI3d) — general liability insurance — punitive damages included**

   Punitive damages were included in general liability insurance coverage where the policy provided coverage for damages because of bodily injury. The punitive damages in this case arose from and were in consequence of the bodily injuries; furthermore, incorporating the policy's definitions into its coverage provision reveals that the policy expressly provides coverage for all sums which the insured shall become legally obligated to pay as damages, including damages for death, because of bodily injury.

   **Am Jur 2d, Insurance § 1557.**

   **Liability insurance coverage as extending to liability for punitive or exemplary damages. 16 ALR4th 11.**

3. **Insurance § 149 (NCI3d) — general liability insurance — punitive damages — exclusion — not applicable**

   Summary judgment was improperly granted for the insurer in a declaratory judgment action to determine, among other things, whether a general liability insurance policy excluded punitive damages. It is undisputed that the policy con-

COLLINS & AIKMAN CORP. v. HARTFORD ACCIDENT & INDEMNITY CO.

[106 N.C. App. 357 (1992)]

tains no express exclusion for punitive damages and the Court of Appeals would not attempt to determine if somehow punitive damages can be construed as a "fine" or "penalty," both of which are excluded. If the insurer intended to eliminate coverage for punitive damages it could and should have inserted a single provision so stating.

**Am Jur 2d, Insurance § 1558.**

**Liability insurance coverage as extending to liability for punitive or exemplary damages. 16 ALR4th 11.**

APPEAL by plaintiff from order entered 18 March 1991 in MECKLENBURG County Superior Court by *Judge Chase Boone Saunders.* Heard in the Court of Appeals 10 March 1992.

*Parker, Poe, Adams & Bernstein, by Irvin W. Hankins III and Josephine H. Hicks, for plaintiff-appellant.*

*Patterson, Dilthey, Clay, Cranfill, Sumner & Hartzog, by Ronald C. Dilthey, Theodore B. Smyth, and Susan K. Burkhart, for defendant-appellee Hartford Accident & Indemnity Company.*

GREENE, Judge.

Plaintiff appeals from an order filed 18 March 1991, denying plaintiff's motion for partial summary judgment and granting the partial summary judgment motion of defendant The Hartford Accident & Indemnity Company (Hartford).

Plaintiff Collins & Aikman Corporation (C&A) is a Delaware corporation with offices in New York and Charlotte which manufactures and distributes textile products. C&A is licensed to do business in eight states, including North Carolina. C&A's transportation division is located in Albemarle, North Carolina, and ninety-seven of C&A's 102 trucks are registered in North Carolina.

*The Accident*

On 29 February 1988, C&A employee Wayne Smith was driving a C&A tractor trailer on U.S. Highway 421 in Yadkin County, North Carolina, when he collided with a car driven by Gregory Howard. Both Gregory Howard and his wife, Jane Howard, were killed. In May, 1989, the executrix of the Howards' estate filed a wrongful death action against C&A seeking compensatory and punitive damages. The lawsuit was tried in Cumberland County,

**COLLINS & AIKMAN CORP. v. HARTFORD ACCIDENT & INDEMNITY CO.**

[106 N.C. App. 357 (1992)]

North Carolina, and on 14 June 1990, judgment was entered on a jury verdict against C&A for $2,500,000 in compensatory damages and $4,000,000 in punitive damages, plus costs. The parties thereafter settled the judgment for approximately $4,200,000.

### The Insurance Coverage

In January, 1987, Wickes Companies, Inc. (Wickes), a Delaware corporation with its principal place of business in Santa Monica, California, acquired C&A. Thereafter, Wickes asked Marsh & McLennan, an independent insurance broker in Los Angeles, California, to purchase an excess liability insurance policy for C&A for the period of 1 March 1987 to 1 March 1988. Marsh & McLennan, with input from Steve Baker of Wickes and Don Duncan (Duncan), C&A's risk manager in Charlotte, negotiated the purchase from Hartford of a policy which provided five million dollars of liability insurance coverage in excess of a two million dollar primary policy issued by the Aetna Casualty and Surety Company (Aetna). On 27 February 1987, Marsh & McLennan placed the order for the policy via a telecopier letter from its office in California to Hartford at its Connecticut office. Hartford mailed the policy to Marsh & McLennan in California sometime in March, 1987. Marsh & McLennan forwarded the policy binder confirming coverage to Duncan in Charlotte in March, 1987. However, the record reveals that on 8 April 1987, Marsh & McLennan notified Duncan that three exclusion endorsements had to be signed and accepted by C&A "before a policy can be issued." Duncan signed the endorsements in Charlotte and returned them to Marsh & McLennan. Marsh & McLennan retained the Hartford policy in California until 8 March 1988, when it was forwarded to Duncan in Charlotte.

The named insured under the policy (hereinafter "the Hartford policy") is "Collins & Aikman Corporation, 210 Madison Avenue, New York, New York 10016." The three exclusion endorsements signed by Duncan list C&A's Charlotte office as the address of the named insured. The coverage portion of the Hartford policy states:

> The company will pay on behalf of the insured ultimate net loss in excess of the total applicable limit . . . of underlying insurance . . . because of bodily injury, personal injury, property damage or advertising injury to which this insurance applies caused by an occurrence.

"Ultimate net loss" is defined as "all sums which the insured and his or her insurers shall become legally obligated to pay as damages, whether by final adjudication or settlement . . . ." Under the terms of the policy, " 'damages' include damages for [death] which result[s] at any time from bodily injury to which this policy applies . . . ." The policy states that " 'damages' do not include fines or penalties or damages for which insurance is prohibited by the law applicable to the construction of this policy." "Bodily injury" is defined as "bodily injury, sickness or disease . . . ." The policy's definitions of personal injury, property damage, and advertising injury establish that none of these are involved in the instant case. An "occurrence" means "an accident . . . which results in bodily injury . . . neither expected nor intended from the standpoint of the insured . . . ."

The Hartford policy expired on 1 March 1988.

### The Coverage Dispute

On 18 July 1990, Hartford issued a denial of coverage and reservation of rights, contending that the punitive damages awarded in the Howard lawsuit are not covered under the Hartford policy. On 24 August 1990, Hartford filed a declaratory judgment action against C&A in federal district court in New York, alleging that punitive damages are excluded under the Hartford policy. On 18 September 1990, Hartford, Aetna, C&A, and Wickes entered into a funding agreement pursuant to which Aetna and Hartford each contributed to the funding of the settlement of the judgment in the Howard lawsuit, and in which each party reserved the right to litigate its rights and obligations.

On 1 October 1990, C&A filed this action against Hartford and Aetna seeking, among other things, a declaratory judgment that the Hartford policy covers the punitive damages award. C&A also filed a motion to stay the New York action, which was granted by the New York district court. On 24 October 1990, C&A filed a motion for partial summary judgment, which the trial court continued pursuant to a motion by Hartford.

On 11 December 1990, Hartford filed its answer which included a counterclaim against C&A seeking reimbursement from C&A in the amount of $733,112.75, the sum paid by Hartford as punitive damages pursuant to the funding agreement. On 18 March 1991, the trial court denied C&A's motion for partial summary judgment

**COLLINS & AIKMAN CORP. v. HARTFORD ACCIDENT & INDEMNITY CO.**

[106 N.C. App. 357 (1992)]

and granted Hartford's motion for partial summary judgment, determining that the Hartford policy provides no coverage to C&A for the payment of the punitive damages award and ordering, pursuant to the funding agreement, that Hartford recover from C&A the sum of $733,112.75 plus interest. The trial court, pursuant to N.C.G.S. § 1A-1, Rule 54(b), certified the order for immediate appeal.

---

The issues are I) whether liability insurance constitutes insurance on "property, lives, or interests in this State," thus subjecting the construction of the Hartford policy to North Carolina law pursuant to N.C.G.S. § 58-3-1; II) if so, under North Carolina law, whether the Hartford policy by its terms provides coverage for punitive damages; and III) if so, under North Carolina law, whether the Hartford policy's provision that " 'damages' do not include fines or penalties or damages for which insurance is prohibited by the law applicable to this policy" operates as an exclusion from coverage of punitive damages.

I

[1]  C&A argues that N.C.G.S. § 58-3-1 mandates that we construe the Hartford policy in accordance with the laws of North Carolina. Hartford argues that Section 58-3-1 is not applicable to liability insurance. Section 58-3-1 provides:

> All contracts of insurance on property, lives, or interests in this State shall be deemed to be made therein, and all contracts of insurance the applications for which are taken within the State shall be deemed to have been made within this State and are subject to the laws thereof.

N.C.G.S. § 58-3-1 (1991). Because the Hartford policy application was not "taken" in North Carolina, the question is whether the policy insures "property, lives, or interests" in North Carolina. If it does, then the policy must be construed in accordance with the laws of North Carolina.

The Hartford policy is a general liability insurance policy wherein Hartford agrees to pay "on behalf of the insured" certain claims for which C&A shall become liable due to, among other things, bodily injury to others caused by C&A. As such, the policy does not insure "property [or] lives." It is, however, insurance on an "interest." Liability insurance by its very nature protects an interest of the insured in that it "shield[s] the insured from being

required to make any payment on [a] claim for which he is liable." 11 Mark S. Rhodes, Couch on Insurance 2d § 44:4 (1982). Moreover, the Hartford policy insures an interest "in this State" because North Carolina is a principal location of a risk insured by the policy. The record establishes that C&A's fleet of nearly one hundred tractor trailer trucks is garaged in North Carolina, thus increasing C&A's potential for liability in North Carolina. *See* Restatement (Second) of Conflict of Laws § 193 cmt. b. (1969) (the place where a vehicle is garaged is the principal location of the risk insofar as liability insurance is concerned). In sum, the Hartford policy insures an "interest in this State," and therefore the laws of North Carolina govern the construction of the policy.

II

[2] If the terms of an insurance contract provide coverage for punitive damages, public policy does not prohibit such coverage. *Mazza v. Medical Mut. Ins. Co.*, 311 N.C. 621, 631, 319 S.E.2d 217, 223 (1984). Thus, the question presented is whether the terms of the Hartford policy provide coverage for punitive damages.

C&A argues that the definition of the term "ultimate net loss" encompasses punitive damages because it includes *all sums* which the insured becomes legally obligated to pay as damages because of bodily injury, including death. C&A asserts that it became legally obligated to pay the punitive damages award as a direct result of the Howards' bodily injuries, specifically, their deaths. Hartford, on the other hand, argues that the policy covers only compensatory damages awarded because of bodily injury.

In *Mazza, supra,* our Supreme Court interpreted a liability insurance policy in which the insurer contracted to pay on behalf of its insured "all sums which the insured . . . shall become legally obligated to pay as damages . . ." because of claims arising out of the performance of professional services. The Court, construing the policy in favor of coverage, concluded that this coverage provision was "so broad that it must be interpreted to provide coverage for punitive damages . . . ." *Mazza,* 311 N.C. at 628-29, 319 S.E.2d at 222. Furthermore, in the policy "damages" were defined as "all damages, including damages for death, which are *payable because of injury* to which this insurance applies" (emphasis added). The Court rejected the insurer's argument that the use of the phrase "payable because of injury" operated in any way to exclude punitive

damages from the damages covered by the policy. *Id.* at 629-30, 319 S.E.2d at 222-23.

Like the policy at issue in *Mazza,* the Hartford policy provides coverage for "all sums which the insured . . . shall become legally obligated to pay as damages . . . ." Nevertheless, Hartford contends that the policies are materially different and that therefore *Mazza* is not controlling. In support thereof, Hartford suggests that, unlike the policy in *Mazza,* its policy provides coverage only for those sums which C&A becomes legally obligated to pay as damages because of *bodily* injury, which is defined in the policy as "bodily injury, sickness or disease . . . ." Hartford, relying on *South Carolina Ins. Co. v. White,* 82 N.C. App. 122, 345 S.E.2d 414 (1986), contends that damages recoverable because of "bodily injury" are limited to damages because of physical pain, illness or any impairment of physical condition. We disagree. In *White,* the Court held that damages for "bodily injury" were not limited to damages because of physical pain, illness or impairment of physical condition, but included damages arising from or in consequence of a covered bodily injury. *Id.* at 124, 345 S.E.2d at 416 (wife entitled under a "bodily injury" insurance policy to damages for loss of consortium arising out of husband's bodily injuries unless policy limit has been exhausted). In the case at bar, the punitive damages arose from and were in consequence of the bodily injuries suffered by the Howards.

Furthermore, the Hartford policy in its definitions section expressly provides that "damages" include damages for death which results from bodily injury to which the policy applies. Incorporating the policy's definitions into its coverage provision reveals that the policy expressly provides coverage for *all sums* which the insured shall become legally obligated to pay as damages, including damages for death, because of bodily injury. Nothing in this coverage provision suggests that the policy covers only compensatory damages. Therefore, punitive damages are included in the policy's coverage provision.

### III

[3] Hartford argues that the following policy provision operates to exclude punitive damages from the damages covered by the policy: " 'Damages' do not include fines or penalties or damages for which insurance is prohibited by the law applicable to the construction of this policy."

It is well established that if an exclusionary clause in an insurance policy is not expressed plainly and without ambiguity, then the exclusion will be construed in favor of the insured. *State Automobile Mutual Ins. Co. v. Hoyle,* 106 N.C. App. 199, ---, --- S.E.2d ---, --- (1992). "The reason for this rule is that the insurance company selected the phrase to be construed and should have specifically excluded the risk if there was any doubt." 43 Am Jur 2d Insurance § 291 (1982); *accord Mazza,* 311 N.C. at 631, 319 S.E.2d at 223. In the instant case, Hartford chose to exclude from the definition of damages "fines," "penalties," and "damages for which insurance is prohibited by the law applicable to the construction of this policy," without further explanation. It is undisputed that the policy contains no express exclusion for punitive damages. Under these facts, we will not attempt to determine if somehow punitive damages can be construed as either a "fine" or a "penalty," as Hartford suggests. Rather, the language of the Supreme Court in *Mazza* is pertinent: If Hartford "intended to eliminate coverage for punitive damages it could and should have inserted a single provision stating 'this policy does not include recovery for punitive damages.'" *Mazza,* 311 N.C. at 630, 319 S.E.2d at 223.

For the foregoing reasons, we reverse the trial court's order granting summary judgment for Hartford, and remand this case for entry of summary judgment for C&A.

Reversed and remanded.

Judges JOHNSON and COZORT concur.