**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

CONTINENTAL CASUALTY COMPANY,
                    *Plaintiff-Appellee,*

v.

PHYSICIANS WEIGHT LOSS CENTERS OF
AMERICA, INCORPORATED; CHARLES E.
SEKERES; CECILE HOLDEN; JOHN D.
SIDERIS; CELINK, INCORPORATED; PAUL
C. HUNT; PCH TODAY,
INCORPORATED; COOKIE PARKER; P. A.
PARKER; HEALTHY WEIGH,
INCORPORATED,
                    *Defendants-Appellants,*

                    and

KELLY K. SUGGS,
                    *Defendant.*

No. 02-2123

CONTINENTAL CASUALTY COMPANY,
                    *Plaintiff-Appellee,*

v.

KELLY K. SUGGS,
                    *Defendant-Appellant,*

                    and

PHYSICIANS WEIGHT LOSS CENTERS OF
AMERICA, INCORPORATED; CHARLES E.
SEKERES; CECILE HOLDEN; JOHN D.
SIDERIS; CELINK, INCORPORATED; PAUL
C. HUNT; PCH TODAY,
INCORPORATED; COOKIE PARKER; P. A.
PARKER; HEALTHY WEIGH,
INCORPORATED,

                    *Defendants.*

No. 02-2124

Appeals from the United States District Court
for the Eastern District of North Carolina, at Wilmington.
James C. Fox, Senior District Judge.
(CA-01-116-7-F-1)

Argued: February 28, 2003

Decided: March 31, 2003

Before WILKINSON, NIEMEYER, and MOTZ, Circuit Judges.

Reversed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** Theodore Blackburn Smyth, THOMPSON, SMYTH &
CIOFFI, L.L.P., Raleigh, North Carolina; John Francis Bloss, Sr.,

CLARK & BLOSS, P.L.L.C., Greensboro, North Carolina, for Appellants. Richard Thell Boyette, CRANFILL, SUMNER & HARTZOG, L.L.P., Raleigh, North Carolina, for Appellee. **ON BRIEF:** Frederick L. Berry, BARRON & BERRY, L.L.P., Greensboro, North Carolina, for Appellant Suggs. George L. Simpson, IV, CRANFILL, SUMNER & HARTZOG, L.L.P., Raleigh, North Carolina, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

PER CURIAM:

Continental Casualty Company filed suit in district court requesting a declaration that it has no duty to defend Physicians Weight Loss Centers of America, Inc. ("PWLC") against charges brought by Kelly Suggs in a separate state court lawsuit. The district court held that, while PWLC does have a valid commercial insurance policy with Continental, any liability for Suggs' claims against PWLC would not be covered by that policy. It therefore issued a declaratory judgment in Continental's favor, absolving Continental from liability for any judgment against PWLC and authorizing Continental to withdraw its defense in the state court action. For the reasons that follow, we reverse.

### I.

PWLC is an Ohio-based corporation that has developed a number of proprietary weight loss programs that it licenses to approved franchisees located throughout parts of the midwestern and southern United States. Prospective PWLC clients are required to undergo several medical examinations and tests — including blood work, EKGs, a physical examination, and a thorough review of their medical history — in order to determine whether they are healthy enough to participate in a PWLC weight loss program. Each PWLC franchise hires

doctors to perform these examinations in accordance with mandatory protocols and procedures set forth in a corporate manual.

PWLC doctors also prescribe weight loss drugs for clients who are participating in weight loss programs that include the monitored use of prescription medicine. PWLC requires that clients purchase such drugs directly through the PWLC franchises rather than filling the prescriptions themselves at independent local pharmacies. At least as practiced at the PWLC franchise in Greensboro, North Carolina, this process is fairly straightforward. A PWLC doctor writes and signs a prescription, which the client never actually sees. The client makes a direct payment to the PWLC franchise for the medication. The franchise faxes the prescription to a central pharmacy in Ohio, which fills the order after receiving credit card payment from the PWLC franchise. The pharmacy then mails the medication directly to the client. These prescriptions are approved in two-week increments, requiring frequent return visits to the PWLC franchise by the client. These frequent visits function in part as a management and monitoring mechanism for each individual's weight loss program.

In March 1998, Kelly Suggs signed up for PWLC's weight loss program at a PWLC franchise in Greensboro, North Carolina. After undergoing the required medical evaluation, Suggs was assigned to a weight loss program, one component of which included a prescription weight loss drug called Meridia. As required by the program, Suggs purchased Meridia directly from PWLC for approximately $115 per two-week supply. Shortly after receiving her first prescription in the mail, however, Suggs discovered that she could purchase the same two-week supply of Meridia from a local pharmacy for $43. She therefore spoke with her PWLC physician and requested that he write a prescription and give it directly to her. The doctor refused to give her a separate written prescription, because he was forbidden to do so by the local franchise and by PWLC corporate regulations.

Suggs then filed a class action suit against PWLC in North Carolina state court, seeking both compensatory and punitive damages. She alleged violations of a wide variety of North Carolina laws, including the Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1 (2003), the Pharmacy Practice Act, N.C. Gen. Stat. § 90-85.2 (2003), the Controlled Substances Act, N.C. Gen. Stat.

§§ 90-95(a)(1), 90-108(a)(10),(13) (2003), the North Carolina RICO Act, N.C. Gen. Stat. § 75D-1 (2003), and § 58-51-37 of North Carolina's health insurance regulations. Suggs also alleged intentional interference with fiduciary duty as well as both constructive and actual fraud.

At the time Suggs' state court action was filed, PWLC was covered by a professional liability policy issued by Continental Casualty. In relevant part, that policy provides "coverage against professional liability claims brought against [PWLC] resulting from professional services provided by [PWLC]." Continental will thus cover any damages PWLC might become legally obligated to pay as a result of the "providing or withholding of professional services" either by PWLC directly or "by anyone for whose acts [PWLC is] legally responsible." The policy further provides that "[p]rofessional services are those health care or medical services [PWLC] normally provide[s] as a [weight loss program center]." The policy is limited by two relevant exclusions. It does not cover "liability arising out of the violation . . . of any law or regulation imposing criminal penalties." And it does not cover "[f]ines, penalties, [or] the return or withdrawal of fees or governmental payments."

Continental initially informed PWLC that it would provide a defense in the North Carolina action, but that it was reserving the right to challenge its purported duties to defend PWLC and cover any liability that might arise out of Suggs' lawsuit. Continental then filed the present action in federal court, naming most of the parties to Suggs' lawsuit as defendants and seeking a declaration of Continental's own rights and duties under the professional liability insurance policy. On cross motions for summary judgment, the district court held that the liability policy did not provide coverage for any of Suggs' claims and that Continental was entitled to withdraw its defense in the underlying action. This appeal ensued.

## II.

We review the district court's ruling on summary judgment de novo. *Gallagher v. Reliance Standard Life Ins. Co.*, 305 F.3d 264, 268 (4th Cir. 2002). Summary judgment is appropriate only if "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). In

determining both grants and denials of summary judgment, we view all evidence in the light most favorable to the nonmoving party. *Goldstein v. Chestnut Ridge Volunteer Fire Co.*, 218 F.3d 337, 341 (4th Cir. 2000).

### III.

The district court held that Ohio law governed its analysis of the parties' contractual rights under the insurance policy.[1] In North Carolina, it is a "general rule" that "the principle of *lex loci contractus* mandates that the substantive law of the state where the last act to make a binding contract occurred, usually delivery of the policy, controls the interpretation" of an insurance policy. *Fortune Ins. Co. v. Owens*, 526 S.E.2d 463, 466 (N.C. 2000). The district court observed that the policy in this case was delivered to PWLC in Ohio; it further noted that PWLC is an Ohio corporation and that the policy was negotiated in Ohio with an Ohio-based insurance agency. The district court therefore held that Ohio law controlled the case.

As appellants point out, however, North Carolina has created a statutory "exception to [the] general rule" of *lex loci contractus*. *Id.* Under that exception, "[a]ll contracts of insurance on property, lives, or interests in this State shall be deemed to be made therein." N.C. Gen Stat. § 58-3-1 (2003). Because of constitutional concerns,[2] application of this provision has been limited to situations where there is a "close connection" between North Carolina and the interests insured by the policy. *Collins & Aikman*, 436 S.E.2d at 246. Where such a connection exists, however, North Carolina law controls the interpretation of an insurance policy.

---

[1]We hold as a preliminary matter that the district court did not err in refusing to transfer or dismiss this case on the grounds of improper venue.

[2]The North Carolina Supreme Court noted that states may not apply their own law to interpret a contract if "the interest of the forum has but slight connection with the substance of the contract obligations." *Collins & Aikman Corp. v. Hartford Acc. & Indem. Co.*, 436 S.E.2d 243, 245 (N.C. 1993) (citing *Hartford Acc. & Indem. Co. v. Delta & Pine Land Co.*, 292 U.S. 143, 150 (1934)). Appellants have not raised the constitutional issue, and we do not address it here.

In this case, there is a sufficiently close connection between the interests insured by the policy and the state of North Carolina to mandate the application of North Carolina law in this case. At the time of trial, four of PWLC's roughly fifty franchises were located in North Carolina. Each of the North Carolina franchises serviced a great many North Carolina citizens: Suggs' second amended complaint alleges that there were roughly 5,000 PWLC customers in North Carolina between June 1995 and June 2000, and Continental itself estimates that there were at least 2,000. In light of these facts, North Carolina has "much more than a casual connection with the substance of the insurance policy," and N.C. Gen. Stat. § 58-3-1 requires that we interpret the insurance policy under North Carolina law. *Id.* at 245; *see also Martin v. Cont'l Ins. Co.*, 474 S.E.2d 146, 149-50 (N.C. App. 1996) (holding that the registration of 1,479 automobiles — 18% of the insured's fleet — in North Carolina created a sufficiently "close connection" to justify applying North Carolina law to an insurance contract dispute).[3]

## IV.

Under North Carolina law, an insurer's duty to defend is "measured by the facts as alleged in the pleadings" in the underlying lawsuit. *Waste Mg't of Carolinas, Inc. v. Peerless Ins. Co.*, 340 S.E.2d 374, 377 (N.C. 1986). If the pleadings state facts that, were they proven, would "demonstrat[e] that the alleged injury is covered by the policy, then the insurer has a duty to defend, whether or not the insured is ultimately liable." *Id.* This duty is broader than the duty to indemnify, such that even "pleadings that disclose a mere *possibility* that the insured is liable (and that the potential liability is covered) suffice to impose a duty to defend upon the insure[r]." *Id.* at 377 n.2 (emphasis added). In interpreting the scope of the policy itself, all ambiguities are "strictly construed against the insurer and in favor of the insured." *State Capital Ins. Co. v. Nationwide Mut. Ins. Co.*, 350 S.E.2d 66, 73 (N.C. 1986). Thus, "policy provisions which extend coverage are construed liberally in favor of coverage." *Spangler Constr. Co. v. Indus. Crankshaft and Eng'g Co.*, 388 S.E.2d 557, 563 (N.C. 1990).

---

[3]As Continental itself acknowledges, this renders moot Ohio law's policy against insuring intentional torts.

PWLC argues that the "professional services" provision of the insurance policy requires Continental to cover any liability that might arise from Suggs' complaint. The policy defines "professional services" as "those health care or medical services [PWLC] normally provide[s] as a [weight loss program center]." As further guidance in interpreting that brief definition, North Carolina courts have interpreted the term "professional services" as covering "those services where a professional relationship exists between plaintiff and defendant — such as a physician-patient or attorney-client relationship." *Barger v. McCoy Hillard & Parks*, 488 S.E.2d 215, 223 (N.C. 1997) (construing N.C. statute). In the context of insurance policy exclusions clauses, North Carolina courts have held that a "professional service" is generally defined as "one arising out of a vocation or occupation involving specialized knowledge or skills, and [one in which] the skills are mental as opposed to manual." *Duke Univ. v. St. Paul Fire and Marine Ins. Co.*, 386 S.E.2d 762, 765 (N.C. 1990) (construing the term "professional service" narrowly because it was in an exclusion clause rather than in a coverage clause). And the determination of what constitutes a professional service "depends upon the nature of the activity rather than the position of the person responsible for the act or omissions." *Id.*

Continental argues that this is not a case about professional services, but rather a "mere dispute over pricing." In particular, Continental emphasizes that as a substantive matter, Suggs was pleased with the clinical care she was receiving and only objected to the high payments for Meridia. This is a mischaracterization of Suggs' charges in the underlying action. Suggs' complaint clearly alleges that her PWLC doctor had "violated his fiduciary duty to Suggs" when he "refused to give Suggs her prescription." It also alleges that Suggs' doctor was "acting pursuant to a contract [with PWLC] which controlled [his] actions and the exercise of [his] medical and professional judgment," and was therefore acting as "PWLC's agent when he treated Suggs." It further alleges that the actions of all the PWLC defendants were "pursuant to express and implied agreements among themselves and constitute[ ] a conspiracy."

A central focus of Suggs' allegations, then, is that PWLC required its agent (the physician) to deny Suggs a medically-indicated prescription, and that PWLC then leveraged that refusal to force Suggs

to purchase the prescription from the central pharmacy. According to Suggs, in other words, the professional service was the dispensation of a necessary prescription, and the breach of the doctor's fiduciary duty in providing his medical services inhered in his refusal to dispense that prescription. Continental does not dispute that this prescription was medically indicated in Suggs' case. Nor does Continental dispute that writing medically-indicated prescriptions is one of "those health care or medical services [PWLC] normally provide[s] as a [weight loss program center]." Nor does it dispute that writing prescriptions is a paradigmatically professional service, one which arises "out of a vocation or occupation involving specialized knowledge or skills, [where] the skills are mental as opposed to manual." *St. Paul Fire and Marine*, 386 S.E.2d at 765. Particularly since "policy provisions which extend coverage are construed liberally in favor of coverage," *Spangler Constr.*, 388 S.E.2d at 563, we cannot say that prescription writing is not a professional service, or that a physician's refusal to write a necessary prescription is not the "witholding of [a] professional service[ ]" under the terms of the policy. The underlying state court action therefore triggers Continental's duty to defend.

V.

Continental next points to a clause in the insurance policy providing that "[t]his agreement does not cover . . . fines, penalties, the return or withdrawal of fees or government payments." Continental argues that because Suggs is seeking refunds for the amount she paid for prescription drugs, she is in effect seeking a "return . . . of fees." Continental therefore contends that it is absolved from any duty to defend PWLC in the underlying state court action.

We disagree. In North Carolina, exclusions from coverage are construed narrowly in favor of coverage. *St. Paul Fire and Marine*, 386 S.E.2d at 765. Particularly in light of this rule of construction, we cannot say that the "return of fees" exception applies to the underlying state court action.

To begin with, the plain language of the exception does not appear to apply to payments for goods or physical items. *Black's Law Dictionary* defines "fee" as a charge for "an official or professional service,"

for "a particular act or service," for "labor," for "performance of services or something done or to be done," for "services of public officers," or for "use of a privilege under control of government." *Black's Law Dictionary* (6th ed. 1990); *see also Merriam-Webster's Collegiate Dictionary* (10th ed. 1999) ("a fixed charge" or "a sum paid or charged for a service"). In common usage, in other words, "fee" refers to the price for a *service*.[4] But Suggs is seeking damages based on the inflated purchase price of a good, not a service. Moreover, the context of the exclusion suggests that it is limited to fees paid to the government: the other excluded payments in the relevant clause are "[f]ines," "penalties," and "government payments" — all of which apply to payments paid to the government. Suggs is not seeking the return of any fees made to the government. We therefore hold that the "return of fees" exclusion does not absolve Continental from its duty to defend PWLC in the underlying state court action.[5]

## VI.

For the foregoing reasons, we reverse and remand with directions to enter judgment for defendants.

*REVERSED*

---

[4]Continental offers no authority to refute this proposition. The cases cited by Continental on this point all deal with the payment of attorney's fees. *See Hofing v. CNA Ins. Cos.*, 588 A.2d 864 (N.J. Super. App. Div. 1991), *Cont'l Cas. Co. v. Brady*, 907 P.2d 807 (Idaho 1995), *Cont'l Cas. Co. v. Black and Black, P.A.*, 674 So.2d 163 (Fla. App. 1996).

[5]Continental also argues that the policy excludes coverage for criminal penalties or liabilities that may arise from some of Suggs' claims in the underlying state court action. Continental does not argue, however, that the "criminal penalties" exclusion applies to *all* of Suggs' claims. This exclusion therefore does not affect Continental's duty to defend. If the allegations of a single count trigger the insurer's duty to defend, the insurer is obligated to defend the entire action. *E.g.*, *Lambe Realty Inv., Inc. v. Allstate Ins. Co.*, 527 S.E.2d 328, 331 (N.C. App. 2000).