Am. Realty Advisors v. Lexington Ins. Co., 2019 NCBC 58.

| | |
|---|---|
| STATE OF NORTH CAROLINA<br><br>WAKE COUNTY | IN THE GENERAL COURT OF JUSTICE<br>SUPERIOR COURT DIVISION<br>18 CVS 5171 |
| AMERICAN REALTY ADVISORS; and<br>SVF WESTON LAKESIDE, LLC,<br><br>        Plaintiffs,<br><br>   v.<br><br>LEXINGTON INSURANCE<br>COMPANY; CERTAIN<br>UNDERWRITERS AT LLOYD'S OF<br>LONDON SUBSCRIBING TO POLICY<br>NO. V062367; COMMONWEALTH<br>INSURANCE COMPANY; and SR<br>INTERNATIONAL BUSINESS<br>INSURANCE COMPANY LTD.,<br><br>        Defendants. | **ORDER AND OPINION ON<br>PLAINTIFFS' MOTION FOR<br>PARTIAL SUMMARY JUDGMENT<br>ON CHOICE OF LAW** |

1.      THIS MATTER is before the Court on Plaintiffs' Motion for Partial Summary Judgment on Choice of Law ("Motion"), which seeks a determination that N.C.G.S. § 58-3-1 ("Section 58-3-1") requires that insurance coverage under the policies at issue is to be determined by the law of North Carolina.  Having considered the briefs and relevant law, and having heard argument of counsel, the Court GRANTS the Motion.

> *Robinson, Bradshaw & Hinson, P.A., by R. Steven DeGeorge, Richard C. Worf, and Benjamin C. Decelle, for Plaintiffs.*

> *DLA Piper, LLP, by Mark L. Deckman and Aidan M. McCormack, and Wyrick, Robbins, Yates & Ponton, LLP, by Charles George, for Defendant Certain Underwriters at Lloyd's of London Subscribing to Policy No. V062367.*

*Fox Rothschild, LLP, by Thomas M. Contois and Jeffrey R. Whitley, and Mound, Cotton, Wollan & Greengrass, LLP, by Wayne R. Glaubinger and Scott J. Sheldon, for Defendant Lexington Insurance Company.*

*Wilson, Elser, Moskowitz, Edelman & Dicker, LLP, by Jeffrey W. Melcher, for Defendant Commonwealth Insurance Company.*

Gale, Judge.

## I.   INTRODUCTION

2.    Plaintiff SVF Weston Lakeside, LLC ("SVF") owns property in Cary, North Carolina.  Its discretionary real estate manager, Plaintiff American Realty Advisors ("Advisors"), secured insurance policies covering that property for the 2007 policy year from Lexington Insurance Company ("Lexington"), Certain Underwriters at Lloyd's of London Subscribing to Policy No. V062367 ("Underwriters"), Commonwealth Insurance Company ("Commonwealth"), and SR International Business Insurance Company Ltd. ("SR International") (collectively, "Defendants"). This litigation involves disputes as to coverage provided by those policies.  Plaintiffs contend that coverage must be determined by North Carolina law.  Defendants contend that California law should be applied.

3.    The issue turns on the interpretation of a section of North Carolina's Insurance Code which provides:

> All contracts of insurance on property, lives, or interests in this State shall be deemed to be made therein, and all contracts of insurance the applications for which are taken within the State shall be deemed to have been made within this State and are subject to the laws thereof.

N.C.G.S. § 58-3-1.

4.    Plaintiffs contend that Section 58-3-1 applies and mandates that coverage be determined by North Carolina law.  Defendants contend that due process

prohibits applying Section 58-3-1, and the law of California should be applied under traditional conflict of laws principles.

5. Due process requires that North Carolina have a "close connection" to the interests insured before Section 58-3-1 may be applied. *See Collins & Aikman Corp. v. Hartford Accident & Indem. Co.*, 335 N.C. 91, 95, 436 S.E.2d 243, 245–46 (1993). The Court concludes that uncontested facts demonstrate such a close connection, that Section 58-3-1 therefore applies, and as a result the coverage dispute must be resolved pursuant to North Carolina law.[1]

## II. FACTUAL BACKGROUND

6. The Court does not make findings of fact when ruling on a motion for summary judgment but may summarize facts to provide context for its ruling. *See Transatlantic Healthcare, LLC v. Alpha Constr. of the Triad, Inc.*, 2017 NCBC LEXIS 21, at *2 (N.C. Super. Ct. Mar. 9, 2017).

7. This dispute arises from water damage and related loss suffered at the Weston Lakeside luxury apartment complex situated in Cary, North Carolina ("Property"). (Am. Compl. ¶ 1, ECF No. 14.)

8. SVF purchased the Property in 2007. (Aff. Martha Shelley Supp. Pls.' Mot. Partial Summ. J. Choice Law ¶ 6 ("Shelley Aff."), ECF No. 64.2.) SVF is a single purpose Delaware limited liability company whose sole asset is the Property. (Am. Compl. ¶ 3.) Plaintiff Advisors is the discretionary real estate manager responsible

---

[1] The Motion only addresses the law to be applied to the coverage dispute. It does not seek any resolution of what law will control whether Plaintiffs should recover on their claim for unfair or deceptive trade practices.

for the Property, as well as other managed properties in multiple states throughout the United States. (Shelley Aff. ¶ 9.)

9. Lexington is a Delaware company with its principal place of business in Massachusetts. (Am. Compl. ¶ 5.) Lexington is registered with the North Carolina Department of Insurance to provide surplus lines insurance. (Mem. Law Opp'n Pls.' Mot. Partial Summ. J. Choice Law ("Resp. Br.") Ex. 1, N.C. Dep't Ins. Screenshot, ECF No. 70.1.)

10. Upon SVF's acquisition of the Property in 2007, the Property became covered by Lexington's 2006–2007 "all risk" commercial property insurance policy pursuant to an after-acquired property clause that provided primary coverage of $15 million. (*See* Am. Compl. Ex. A, 2006–2007 Lexington Policy ¶ 7, ECF No. 14.2; Mem. Support Pls.' Mot. Partial Summ. J. Choice Law 2–3 ("Mem. Supp."), ECF No. 64.) The Property was also covered by follow-form excess policies issued by Underwriters, Commonwealth, and SR International that provided an additional $10 million in combined coverage. (*See* Am. Compl. Ex. I, Underwriters' Policy, ECF No. 14.10; Am. Compl. Ex. J, Commonwealth Policy, ECF No. 14.11; Am. Compl. Ex. K, SR International Policy, ECF No. 14.2; Mem. Supp. 3.)

11. While Plaintiffs' policies for other years mandate application of California law, the policies at issue in this litigation do not include a mandatory choice of law provision.[2] Rather, each provides:

---

[2] Plaintiffs were involved in separate litigation regarding policies for the 2013 policy year which included a mandatory choice of law provision calling for the application of California law. In that litigation, Plaintiffs argued for the application of California law and against the applicability of Section 58-3-1. *See Certain Interested Underwriters Subscribing to Policy No.*

It is agreed that in the event of the failure of the Company to pay any amount claimed to be due hereunder or in the event of any other dispute relating to this policy, the Company, at the request of the Insured, will submit to the jurisdiction of any court of competent jurisdiction within the United States and will comply with all of the requirements necessary to give such court jurisdiction and all matters hereunder shall be determined in accordance with the law and practice of such court, not including the court's law regarding choice of law.

(*See, e.g.,* Am. Compl. Ex. A, at ¶ 38.)

12. Construction on the Property was completed in early 2007. (Shelley Aff. ¶ 6). The widespread water damage giving rise to this litigation was first discovered in December 2013. (Shelley Aff. ¶ 10.)[3]

13. Plaintiffs contend that the events bear a close nexus to North Carolina, including that property damage and resulting repairs occurred in North Carolina, (Shelley Aff. ¶ 10), the majority of key witnesses as to construction and losses are located in this state, (Shelley Aff. ¶ 12), and the Property is or has been home to hundreds of North Carolinians. (Shelley Aff. ¶ 6.)

14. Defendants contend there are several factors that would mandate that the law of a foreign jurisdiction apply under traditional conflict of law principles,

---

*B1262P20017013 v. Am. Realty Advisors*, No. 5:16-CV-940-FL; No. 5:17-CV-74-FL, 2017 U.S. Dist. LEXIS 185842, at *10 (E.D.N.C. Nov. 9, 2017). The court in that litigation found Section 58-3-1 inapplicable in the face of a mandatory choice of law provision. *Id.* at *12–13 (citing *Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 602 (4th Cir. 2004) (applying North Carolina law)). Because of positions taken by Plaintiffs in the California litigation, Defendants contend that Plaintiffs should now be estopped in this litigation from arguing for the application of North Carolina law pursuant to Section 58-3-1. The Court concludes that Defendants' argument is misplaced in the face of the distinction in the policies at issue; one includes a mandatory choice of law provision while the other does not. Notably, Plaintiffs also in their various correspondence consistently maintained that ". . . the Insured reserves all rights, express and implied, and waives none." (Resp. Br. Ex. 2, at 11, ECF No. 70.2; Resp. Br. Ex. 3, at 4, ECF No. 70.3.)

[3] At this juncture, the court need not determine when coverage was "triggered" under any particular policy, if at all.

including that Lexington is incorporated in Delaware, Advisors applied for the policies from its California domicile, and the policies were delivered in California and became effective when accepted by the insurers in Massachusetts. (Mem. Supp. 4.)

## III.    PROCEDURAL HISTORY

15.    The Complaint was filed on April 26, 2018. (Compl., ECF No. 3.) The action was designated as a mandatory complex business case on May 16, 2018, (Designation Order, ECF No. 5), and assigned to the undersigned on May 17, 2018 (Assignment Order, ECF No. 2).

16.    A First Amended Complaint was filed on October 3, 2018. (Am. Compl.) The Motion was filed on April 15, 2019, (Pls.' Mot. Partial Summ. J., ECF No. 63), then fully briefed, and oral argument was heard on June 25, 2019. The Motion is now ripe for determination.

## IV.    STANDARD OF REVIEW

17.    Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that any party is entitled to judgment as a matter of law." N.C. R. Civ. P. 56(c). The moving party bears "the burden of clearly establishing lack of a triable issue." *N.C. Farm Bureau Mut. Ins. Co. v. Sadler*, 365 N.C. 178, 182, 711 S.E.2d 114, 116 (2011).

## V.    ANALYSIS

18.    The general traditional conflict of laws principles applicable to contracts focuses on the location of the last act necessary to make the contract, including some

insurance policies. *See Fortune Ins. Co. v. Owens*, 351 N.C. 424, 428, 526 S.E.2d 463, 466 (2000) ("With insurance contracts the principle of *lex loci contractus* mandates that the substantive law of the state where the last act to make a binding contract occurred, usually delivery of the policy, controls the interpretation of the contract."). However, Section 58-3-1 mandates that, for any policy to which it applies, the insurance contract is deemed to have been made in North Carolina as a matter of law, thereby requiring application of North Carolina law in interpreting coverage under the insurance policy. Section 58-3-1's reach is broad but is tempered by due process.

19. The North Carolina Supreme Court has held that due process constrains applying Section 58-3-1 unless North Carolina has a "close connection" to the insured loss. *Collins & Aikman Corp. v. Hartford Accident & Indem. Co.* 335 N.C. 91, 94–95, 436 S.E.2d 243, 245–46 (1993).[4] The test is simply stated but not so simply applied as its application revolves around the facts of particular cases from which no formula may be easily derived.

20. In *Collins,* a Delaware corporation with offices in New York and Charlotte and a transportation division headquartered in Albemarle, North Carolina, purchased insurance covering a fleet of vehicles almost all of which were registered in North Carolina. *Collins & Aikman Corp. v. Hartford Accident & Indem. Co.*, 106 N.C. App. 357, 358, 416 S.E.2d 591, 591–92 (1992). A California broker negotiated

---

[4] This "close connection" test, while similar, is distinct from the "minimum contacts" standard applied in a long line of personal jurisdiction cases beginning with the United States Supreme Court opinion in *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945).

the insurance contract with the input of a North Carolina employee, and the order was placed in California to a Connecticut office. *Id.* at 359, 416 S.E.2d at 592. The policy was mailed to the California broker and then forwarded to North Carolina. *Id.* The insurer had notice that North Carolina offices were involved in securing the contract as North Carolina addresses were listed on endorsements attached to the policy. *Id.* The Court found that these collective facts detailed "much more than a casual connection with the substance of the insurance policy." *Collins & Aikman Corp.*, 335 N.C. at 95, 436 S.E.2d at 245. The Court ultimately determined that the application of Section 58-3-1 did not contravene due process because of North Carolina's "close connection with the interests insured." *Id.* at 95, 436 S.E.2d at 246. Our Court of Appeals has recognized that the "close connection" inquiry adopted in *Collins & Aikman* is the controlling standard for determining whether Section 58-3-1 can constitutionally be applied to any particular case. *Martin v. Cont'l Ins. Co.*, 123 N.C. App. 650, 656, 474 S.E.2d 146, 149 (1996).

21. Neither *Collins & Aikman* nor *Martin* provided any more extensive discussion of the factors to be used in determining whether a close connection exists. This Court then examined those cases where the question of Section 58-3-1's application was at issue.[5]

---

[5] *Fortune Ins. Co. v. Owens*, 351 N.C. 424, 526 S.E.2d 463 (2000); *Collins & Aikman Corp. v. Hartford Accident & Indem. Co.*, 335 N.C. 91, 436 S.E.2d 243 (1993); *Avis Rent a Car Sys., LLC v. Andrews*, No. COA16-1054, 2017 N.C. App. LEXIS 884 (N.C. Ct. App. Oct. 17, 2017) (unpublished); *Haugh v. Nationwide Mut. Fire Ins. Co.*, 234 N.C. App. 115, 761 S.E.2d 754 (2014); *Naylor Concrete Constr. Co. v. Mid-Continent Cas. Co.*, 232 N.C. App. 184, 754 S.E.2d 259 (2014); *Fortune Ins. Co. v. Owens*, 132 N.C. App. 489, 512 S.E.2d 487 (1999); *Martin v. Cont'l Ins. Co.*, 123 N.C. App. 650, 474 S.E.2d 146 (1996); *BB&T Boli Plan Tr. v. Mass. Mut. Life Ins. Co.*, 2016 NCBC LEXIS 36 (N.C. Super. Ct. Apr. 29, 2016); *Cont'l Cas. Co. v.*

22. A characteristic example of a case with no close connection is a personal injury claim brought in North Carolina from an accident occurring in North Carolina but where the litigants have no other connection to the state. *See, e.g., Fortune*, 351 N.C. at 428–29, 526 S.E.2d at 466 (applying Florida law after finding that the policy was issued in Florida, the vehicle was registered in Florida, and the driver had a Florida driver's license); *see also Haugh v. Nationwide Mut. Fire Ins. Co.*, No. COA13-768, 2014 N.C. App. LEXIS 534, at *6 (N.C. Ct. App. 2014) (unpublished) (noting that both vehicles involved were titled in South Carolina while finding no close connection with North Carolina existed that would justify applying N.C.G.S. § 58-3-1).

23. In contrast, a clear example of a close connection is where a company has an overwhelming majority of its operations in North Carolina and buys its insurance policy from a North Carolina broker. *See Hartford Fire Ins. Co. v. St. Paul Fire & Marine Ins. Co.*, 606 F. Supp. 2d 602, 607 (E.D.N.C. 2009) (applying North Carolina law).

24. The close connection inquiry is not satisfied by a mere tabulation of a defendant's assets or contacts. *See Martin*, 123 N.C. App. at 656, 474 S.E.2d at 149 ("The *Collins* Court did not intend to measure the quantum of a [N.C.G.S.] § 58-3-1 close connection through the abstraction of percentages versus percentages."); *see*

---

*Physicians Weight Loss Ctrs. of Am.*, 61 F. App'x 841 (4th Cir. 2003); *Foster v. Wilet*, 2016 U.S. Dist. LEXIS 161924 (W.D.N.C. Nov. 22, 2016); *Sauer Inc. v. Lexington Ins. Agency Inc.*, 2015 U.S. Dist. LEXIS 122063 (E.D.N.C. Sep. 14, 2015); *Travelers Home & Marine Ins., Co. v. Pope*, 2010 U.S. Dist. LEXIS 117325 (D.S.C. Nov. 3, 2010); *Hartford Fire Ins. Co. v. St. Paul Fire & Marine Ins. Co.*, 606 F. Supp. 2d 602 (E.D.N.C. Jan. 16, 2009); *Race City Fasteners, Inc. v. Selective Ins. Co.* 2007 U.S. Dist. LEXIS 32808 (W.D.N.C. May 3, 2007); *Wilmarth v. McKenzie* 2007 U.S. Dist. LEXIS 32467 (W.D.N.C. May 2, 2007); *Cananwill, Inc. v. Emar Grp., Inc.*, 250 B.R. 533 (M.D.N.C. Mar. 5, 1999).

*also Cont'l Cas. Co. v. Physicians Weight Loss Ctrs. of Am.*, 61 F. App'x 841, 845 (4th Cir. 2003) (applying North Carolina law to conclude that although only four of fifty national franchises were in North Carolina because they had at least 2,000 customers, this constituted a sufficiently close connection).[6]

26. The cases recognize other factors which appear to be relevant but not necessarily controlling. One such factor is whether the policy is a commercial policy. *See Foster v. Wilet*, 2016 U.S. Dist. LEXIS 161924, at *5 (W.D.N.C. Nov. 22, 2016) ("Both *Continental Casualty Company* and *Collins* involved commercial insurance policies. This case involves a non-commercial insurance policy and involved a small number of individuals."). Another factor is the insurer's actual awareness that it is insuring North Carolina based operations. *See Collins & Aikman Corp.*, 106 N.C. App. at 359, 416 S.E.2d at 592 ("The three exclusion endorsements signed by Duncan list C&A's Charlotte office as the address of the named insured.").

26. North Carolina's adoption of its "close connection" standard can be understood against the backdrop of federal cases dealing with insurance outside the context of Section 58-3-1. A series of cases dealing with insurance coverage for

---

[6] Defendants agree that the facts of this case have a greater connection to other states, inviting the Court to employ some sort of balancing test. However, the "close connection" test to be applied to Section 58-3-1 is distinguished from the separate conflict of law standard commonly referred to as the "most significant relationship" test, which may be applied to other claims. *See Andrew Jackson Sales v. Bi-Lo Stores, Inc.*, 68 N.C. App. 222, 225, 314 S.E.2d 797, 799 (1984) (applying "the law of the state having the most significant relationship to the occurrence giving rise to the action"). It is uncertain whether this standard should control Plaintiffs' unfair or deceptive trade practice claim. *See Smithkline Beecham Corp. v. Abbott Labs.*, No. 1:15CV360, 2017 U.S. Dist. LEXIS 39264, at *17 (M.D.N.C. Mar. 20, 2017) (citing *Stetser v. TAP Pharm. Prods., Inc.*, 165 N.C. App. 1, 15, 598 S.E.2d 570, 580 (2004)). That question is not now at issue and is not addressed here.

interstate transactions culminated with the United States Supreme Court adopting its widely cited holding that "for a State's substantive law to be selected in a constitutionally permissible manner, that State must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair." *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 312–13 (1981). *Collins* cites an earlier opinion in this line of cases where the court refused to allow a state statute to be applied because of the state's "slight connection" to the controversy. *Collins & Aikman Corp.*, 335 N.C. at 95, 436 S.E.2d at 245, *citing with approval, Hartford Accident & Indem. Co. v. Delta & Pine Land Co.*, 292 U.S. 143, 150 (1934).

27. A court may be guided by the absence of a mandatory choice of law provision in a policy providing coverage for interstate operations. *Clay v. Sun Ins. Office, Ltd.* ("*Clay II*"), 377 U.S. 179 (1964) (application of the law of the forum upheld where insurer was aware of the potential of suit in various fora but did not require an agreed to choice of law provision). Likewise, an insurer's registration to do business in the forum state may be relevant to whether applying the forum's law is fundamentally fair. *See Allstate Ins. Co.*, 449 U.S. at 318.

28. With these principles in mind, the Court concludes that the combination of undisputed facts supported by the record demonstrates an adequately clear connection between North Carolina and the insured interests to apply Section 58-3-1 consistent with due process.

29. No single fact is determinative, but cumulatively the facts include that the insurers were aware that they were insuring properties located in various states, including North Carolina, they consented to suit in the various states without requiring a mandatory choice of law provision, the damages for which coverage is sought are based on losses occurring in North Carolina arising from the Property being constructed and operated in North Carolina and housing North Carolina residents, as a result of which facts necessary to determine the cause and extent of the losses will depend largely on documents and witnesses located in North Carolina.

## CONCLUSION

30. For the foregoing reasons, the Court concludes that Section 58-3-1 applies and mandates that coverage be determined pursuant to the law of North Carolina.

31. The Motion is then GRANTED.

SO ORDERED, this the 10th day of September, 2019.

/s/ James L. Gale
_____
James L. Gale
Senior Business Court Judge